WARD H. JENNINGS v. SAMUEL DOCKHAM, LUCINDA DOCKHAM, AND OSCAR R. ROBERTS.

*Recording laws—Notice—Correction of record—Ejectment—Pleading—Tax deeds—Possession.*

1. It is error to submit to the jury, in a case involving the good faith of a purchaser of land, whether the fact that the record of a warranty deed forming a part of his chain of title shows that the covenants are limited to the acts of the grantor should have suggested an examination as to whether the grantor had previously deeded to another.

2. Where a plaintiff in ejectment establishes a *prima facie* right to recover at the date of the commencement of suit, a conveyance to the defendant from strangers to plaintiff's title, made after the commencement of suit, is inadmissible under the plea of the general issue; citing *Buell v. Irwin*, 24 Mich. 145; *Jenney v. Potts*, 41 Id. 52; *Hurd v. Raymond*, 50 Id. 369.

3. An attempted correction of the record of a deed, purporting to have been executed by Nathan Chadbourn, by a marginal entry, signed by the deputy register of deeds, that the word " Nahum " was recorded " Nathan " by mistake, and the change of the word " Nathan," where it appears in the body of the deed, to " Nahum," is not authorized by law.

4. A defendant in ejectment, who fails to connect himself with the original title, and who, with knowledge that the plaintiff was in possession by a tenant, claiming to own the land, laid down the fence, and drove upon the land with a load of lumber, and, in answer to an inquiry by the tenant as to his authority so to do, replied that he had purchased the land of the plaintiff, intending thereby to prevent the tenant from informing the plaintiff of such entry, until the defendant could erect a shanty, and thus put himself in a position where he could claim actual possession, cannot question the title of the plaintiff under deeds issued by the Auditor General on the sale of the land for taxes.[1]

Error to Shiawassee. (Newton, J.) Submitted February 15, 1894. Decided March 6, 1894.

Ejectment. Plaintiff brings error. Reversed. The facts are stated in the opinion.

---

[1] For cases construing that portion of How. Stat. § 1166, which provides that " in all suits and controversies involving the title to land claimed and held by virtue of a deed executed by the Auditor General of this State for non-payment of the taxes thereon, * * * no person shall be permitted to question the title acquired by such Auditor General's deed without proving that he, or the person through whom he claims title, had title to the land at the time of the sale thereof for non-payment of taxes, or subsequently, which title was acquired from the United States or from this State," see:

1. *Gamble v. Horr*, 40 Mich. 561, 564, holding that, as all titles in this State are supposed to have been granted or originally recognized and confirmed by the United States or by this State, it must follow that, when one produces such evidence as raises a presumption of title in him according to the settled rules of law, such presumption must be sufficient to bring his case within the protection of the statute.

2. *Maxwell v. Paine*, 53 Mich. 30, 32, holding that actual possession (fairly obtained) under a claim of title is sufficient to enable a defendant in ejectment to attack the title of the plaintiff acquired under a tax deed.

3. *Rogers v. White*, 68 Mich. 10, holding that a defendant in ejectment, to whom the land was conveyed by warranty deed by a party in peaceable possession under a like deed, and whose grantor acquired the government title after the commencement of the suit, can contest the validity of the tax deed under which the plaintiff claims title.

*Geer & Williams,* for appellant.

MONTGOMERY, J.   This is an action of ejectment to recover a fractional quarter section of land.   The court directed a verdict for the plaintiff as to the east one-half, and the jury found for the defendants as to the west one-half.   Plaintiff brings error.

The title from the government was vested in *Nahum* Chadbourn, by deed recorded October 2, 1848.   The plaintiff showed no conveyance of the west half of the description from Chadbourn, but introduced numerous tax-title deeds which showed a chain of title from the State.   Each of the tax titles, however, was shown by the record to be invalid. The plaintiff also offered evidence tending to show acts of possession,—the cultivation of the land for a number of years prior to the entry of defendants.

The defendants sought to deduce title as follows: First, by offering in evidence a record of a deed purporting to be executed and acknowledged by *Nathan* Chadbourn to John Chadbourn, recorded October 3, 1853, and a marginal entry in the record as follows:

"The word 'Nahum' was recorded 'Nathan' by mistake in the annexed record.  .
   [Signed]  "J. BEACH, Deputy Register."

The name "Nathan," where it appears in the body of the deed, was changed to "Nahum," but there was no change of the name where it appeared in the acknowledgment.   The defendants also introduced evidence tending to show that, some time later than the execution of the deed, Nahum stated that he was often called Nathan, and that he answered to either name.   The defendants also introduced a conveyance from John Chadbourn to Lovell Hurd, dat d March 24, 1856, recorded September 27, 1864; and a conveyance of the north 80 acres from Lovell Hurd to Mariah Centre February 8, 1866, recorded March 21, 1866;

and a conveyance of the south 80 acres to James Shields May 20, 1864, recorded January 5, 1865. The defendants also sought to show a certain conveyance, made after the commencement of this suit, from the heirs of Mariah Centre. They then offered testimony tending to show that a conveyance was made by Lovell Hurd in 1875 to John Oscar Roberts, which conveyance was subsequently fraudulently destroyed by the grantor; and defendants showed that they had succeeded to the estate of John Oscar Roberts. The tax titles which plaintiff introduced had been purchased by Lovell Hurd,—some before the alleged conveyance to Roberts in 1875, and some after. Lovell Hurd conveyed to William Hurd in 1881 by special warranty deed, containing covenants of warranty, with the following written in the deed: "Except as to back taxes; and, so far as the acts of said grantor are concerned, this is to be a warranty deed." William Hurd conveyed to Gaskill July 11, 1881, by warranty deed, except as to taxes, and both Gaskill and Lovell Hurd conveyed to plaintiff November 1, 1882.

1. The circuit judge, at plaintiff's request, charged the jury as follows:

"The undisputed evidence in the case shows that the plaintiff was a purchaser of the land in question in good faith and for a valuable consideration, and if the defendants, or either of them, claim title through an unrecorded deed from Lovell Hurd to John Oscar Roberts, the same would be void against the plaintiff under the statutes of the State."

But he added to this instruction the following:

"Unless you find that Lovell Hurd had a title of record to said land, and had conveyed the same in 1875 to Oscar Roberts, the father of one of the defendants, for a valuable consideration, and, after the deed from Hurd and wife was delivered to Oscar Roberts, such transfer would vest the title in Roberts; but such title would not be valid, and could not prevent the plaintiff from recovering, as it

was not recorded at the time plaintiff purchased from Hurd, unless, in the chain of title from Hurd to plaintiff, there were circumstances apparent that would have put a cautious, prudent person on his guard when he was about to purchase, and which plaintiff neglected to observe. In the deed which Lovell Hurd gave to William Hurd, which is a full-covenant warranty deed, there is added this qualification, as I read and understand the deed: ' Except back taxes; and, so far as the acts of said grantor is concerned, this is a warranty.' Deriving title through Lovell Hurd to that portion of the land, that would appear upon the record. Whether or not it was sufficient to put a prudent, cautious man upon his guard, I leave to your determination."

We think this modification of the instruction asked by the plaintiff embodies error. As construed by the court, the deed contained a covenant against the grantor's own acts. The fact that the covenant was so limited would not suggest an examination as to whether the grantor had previously deeded to another. So far as it went, it was an assertion to the contrary. And yet the jury were permitted to infer that a prudent man, because of the restrictions of the covenant, would be bound to question the truth of the assertions which it impliedly made. In effect, Hurd said to the grantee in this conveyance: "I do not undertake to say what others may have done, but I do assert that no previous act of mine, not known to you or ascertainable by an inspection of the record, has impaired the·title which I assume to convey to you."

2. When the action was commenced, the only title which defendants had was that obtained through the unrecorded deed from Lovell Hurd. The other alleged conveyance, from those who were strangers to plaintiff's title, was not admissible under the plea of the general issue. If, as against defendants, plaintiff showed himself entitled to recover at the date of commencement of suit, any right subsequently accruing to defendants should have been

sought by a plea of *puis darrein continuance.* *Jenney v. Potts,* 41 Mich. 52; *Buell v. Irwin,* 24 Id. 145; *Hurd v. Raymond,* 50 Id. 369.

3. We think the attempted correction of the record of the deed from Nathan Chadbourn to John Chadbourn by the deputy register of deeds was without authority of law. See *Elliott v. Peirsol,* 1 Pet. 341; *Foster v. Dugan,* 8 Ohio, 87; *Farmers & Mechanics' Bank v. Bronson,* 14 Mich. 361; *Burton v. Martz,* 38 Id. 762. We do not think the circuit judge intended to convey any other impression to the jury, but as a new trial is necessary, and the point is here made, we think it proper to state our views.

Numerous other questions are raised, but, as we have been furnished with no brief by the defendants, we deem it unnecessary to discuss them at length. Unless defendants are able to connect themselves with the original title, as we think they have not done upon this record, we do not perceive how they are in a position to question the plaintiff's title under his tax deeds, if possession was obtained by them in the manner claimed by plaintiff's counsel in their brief.[1] See *Gamble v. Horr,* 40 Mich. 561; *Covert v. Morrison,* 49 Id. 135.

The judgment, as to the west 63.48 acres of the description, will be reversed, and the case remanded for a new trial.

The other Justices concurred.

---

[1] The brief states that "the manner in which defendants took possession would not entitle them to draw into question the legal sufficiency of Jennings' title. They knew that Jennings was in possession by his tenant, claiming to own the land, and when they laid down the fence, and drove on with a load of lumber, they were followed immediately by Jennings' tenant, and were asked what authority they had to drive in there, and they said they had bought the place of Jennings. This false statement was made for the purpose of inducing Gibbons, the tenant, not to inform Jennings of their coming on the land, until they could get up their shanty, and put themselves in a position where they could say they were in actual possession. Their possession was both wrongful and fraudulent, and not such as to give them any standing in court to require Jennings to show his right to possession."