[Civ. No. 1773.   Third Appellate District.—May 13, 1918.]

## WILLIAM B. ROBBEN, Respondent, v. MRS. I. M. BENSON et al., Appellants.

VENDOR AND PURCHASER—TITLE FREE FROM DEFECTS—CHANGE OF RECORDS—LIABILITY OF PURCHASER.—Under the terms of a contract for the sale of real property requiring the vendor to furnish an abstract showing title free from defects, the purchaser is not obliged to accept title, make payments, or forfeit payments made, where the abstract shows that a deed necessary to complete the title which was recorded in the name of one "Robbins," as grantee, was changed by the county recorder by striking out the name "Robbins" and substituting the name "Robben," with a marginal insertion of the date and initials of such official, such change being made thirty-eight years after the recording of the deed and by a different recorder.

ID.—ACTION FOR FORECLOSURE BY VENDOR AFTER BREACH—RECOVERY ON MONEY PAID AND DAMAGES—RIGHT OF PURCHASER.—Where a vendor, after breach of contract to furnish an abstract showing title free from defects, commences an action to foreclose the purchaser's rights under the contract of sale, and the purchaser, within the time for answering, surrenders the land, he may file a cross-complaint to recover installments paid and damages for the breach.

APPEAL from a judgment of the Superior Court of Solano County.   W. T. O'Donnell, Judge.

The facts are stated in the opinion of the court.

Shinn & Hart, for Appellants.

W. U. Goodman, and F. F. Marshall, for Respondent.

PLUMMER, J., *pro tem.*—On a former hearing of this cause this court expressed its views upon some of the issues involved, which, upon review, we are still satisfied correctly express the law upon the questions considered, and, in so far as the opinion then announced relates thereto, the same is hereby adopted, to wit:

"On the 6th day of December, 1911, the plaintiffs and defendants entered into an agreement for the sale and purchase of certain real estate, situate in the county of Solano, for the agreed price of twenty-one thousand six hundred dollars, pay-

able in installments, two hundred dollars in cash, eighteen hundred dollars on the 21st day of the same month, three thousand dollars on the 6th day of December, 1914, and subsequent installments not necessary to mention herein further than that all deferred payments were to bear interest at the rate of six per cent per annum, to be paid on the 6th day of December of each succeeding year, until the full purchase price should have been paid. Under this agreement the defendants went into possession, paid the sum of two thousand dollars on account of the purchase price, and two interest payments in the sum of eleven hundred seventy-six dollars each, as the same became due, together with all installments of taxes on the premises agreed to be purchased. It was also provided in the agreement that the defendants should make improvements on the premises in the way of installing pumping plants and levelling up and planting to alfalfa at least thirty-four acres of said land, all of which covenants appear to have been faithfully kept at a considerable expense on the part of the defendants.

"The contract of purchase further provides as follows: 'The said party of the first part agrees to furnish said second parties with a complete abstract of said premises up to date hereof, within a reasonable time hereafter, and the second parties are to be given fifteen days in which to examine said abstract and report upon the same; in the event that title to said premises shall be found to be defective, said first party is to be given a reasonable time in which to perfect the same. In the event of a failure to comply with the terms hereof by the said parties of the second part, the said party of the first part shall be released from all obligation in law or equity to convey said property, and said second parties shall forfeit all right thereto.' It is also covenanted that in the event of a failure to pay interest on the deferred installments, the vendor might at his election declare the unpaid balance immediately due and payable.

"On the 8th day of December, 1914, the plaintiff, not having furnished the defendants with an abstract of title, demand was made therefor, and the abstract in question was delivered to the defendants for their inspection.

"In order to show a complete title, it became necessary to show a conveyance from one W. D. Vail to B. W. Robben. The abstract disclosed, however, a conveyance made and executed

on the 8th day of November, 1876, and recorded November 10, 1876, from W. D. Vail to B. W. Robbins. Accordingly the abstract was returned to the attorney for the plaintiff, who, it appears, together with an abstractor, went to the office of the recorder of the county of Solano, and on the 14th day of December, 1914, had the recorder draw two or three lines across the word 'Robbins' and write immediately above the word 'Robben,' and then insert on the margin of the record the following: '12/18/14 F. N. D. by J. P. B.' Thereupon the page in the abstract which had theretofore shown a conveyance from Vail to Robbins was removed, and in its place a page inserted showing a conveyance from Vail to Robben, but not disclosing the interlineations and additions and erasures made upon the official records in the recorder's office.

"The defendants, not being satisfied, made a personal inspection of the official records and ascertained the manner in which the changes above noted had been made, and thereupon declined to accept the title altered in such manner, and asked that the defect be properly corrected. The plaintiff refused to have anything more to do with the abstract, but it does appear that on or about the 15th of January, 1915, a conveyance from Vail to Robben was taken to the recorder's office and recorded. However, the existence of this conveyance and of the fact of its being placed of record was not called to the attention of the defendants, nor does it appear that any supplemental abstract was furnished by the plaintiff to the defendants showing the devolution of title from Vail to Robben. The matter appears to have remained *in statu quo* until about April 5, 1915, when the plaintiff began this action to quiet title to the premises involved. The defendants and appellants counterclaimed for the recovery of the purchase money already paid, and for damages. Judgment passed for the plaintiff, and defendants appeal.

"Upon the trial the plaintiff introduced in evidence a patent from the United States to one William T. Smith, and subsequent conveyances, down to and including one to himself, establishing that at the time of the execution of the contract referred to he possessed a merchantable title. Among the deeds introduced was the one hereinbefore referred to, which appears to be a deed from W. D. Vail to B. W. Robben, dated November 8, 1876, recorded November 10, 1876, and rerecorded January 15, 1915. This deed, filed as plaintiff's ex-

hibit 6, is the one which was erroneously recorded in 1876 as being a conveyance from W. D. Vail to B. W. Robbins. There does not appear to be any testimony showing that the existence of this deed was called to the attention of appellants until its introduction in evidence.

"Upon the conclusion of the plaintiff's testimony showing the matters above recited, the defendants moved for a nonsuit, which, not being granted, and which does not appear to have been passed upon by the court at all, the defendants introduced testimony as to their payments, their objection to the title and damages claimed to have been suffered.

"It will be observed that the contract of purchase called for an abstract showing a title free from defects, and not merely for proof on the trial that the plaintiff had a good and sufficient title to the premises agreed to be sold. Was the attempted correction of the title by the erasure on the official records of the name 'Robbins' and the insertion of the name 'Robben' sufficient to render the title clear from doubt, and make it obligatory upon the appellants to accept the same, make payments as provided in the contract, or suffer forfeiture and loss of all former installments?

"In the case of *Benson* v. *Shotwell*, 87 Cal. 49, [25 Pac. 249, 681], in an action to quiet title brought by the vendor against the vendee for failure to accept title, it appears that a deed which was in fact signed 'Hepburn' was recorded as signed 'Hopkins.' The court said: 'Under the contract, defendant was entitled to a good paper title, sufficient in law, and was not bound to accept a title resting upon the statute of limitations, or take the risk of determining, from facts which he might learn *dehors* the record, whether or not the statute of limitations could be successfully pleaded against an adverse claim. True, plaintiff claimed, and upon the trial proved, that the record was wrong, and that the deed purporting to be from Hopkins was in fact from Hepburn. But at the time when it was his duty to show good title, he allowed the matter to rest upon his naked assertion, and refused to submit his proof for examination, or to permit the deed to be recorded correctly. Defendant had a right, therefore, to stand by the record, and to govern his conduct accordingly.'

"In the case at bar, there does not appear to have been any controversy over the deed from Vail to Robben. Its actual existence does not appear to have been disclosed, nor does the

fact that it was taken to the recorder's office a month later than the furnishing of the corrected abstract, and then re-recorded, appear to have been brought home to the defendants. It thus appears that the plaintiff's right to prevail in this action must stand or fall upon the erasures and interlineations made upon the official record in the recorder's office thirty-eight years after the recording of the written instrument, by a different officer, and for reasons and upon evidence not disclosed to the appellants.

"In the Shotwell case it was held that the vendor had not complied with his contract to show title, and that the production of the deed, the exhibition of it to the vendee, and its introduction upon the trial, did not comply with his contract.

"In *Foster* v. *Dugan*, 8 Ohio, 87, [31 Am. Dec. 432], the court, having under consideration a correction made by a recorder, and a marginal memorandum, held as follows: 'The marginal note, made by the recorder on the registry, cannot be admitted as evidence to affect the validity of the deed. When it was made does not appear, but it must have been after registration. It is not competent for a public officer to undo what he has once done, and thus correct his errors; when he has executed his duties, he is *functus officio*, and has lost his power over the subject.'

"In *Jennings* v. *Dockham*, 99 Mich. 253, [58 N. W. 66], it appears that title was vested in one 'Nahum' Chadbourn. By deed recorded October 2, 1848, title was sought to be sustained by offering in evidence a record of a deed purporting to be executed and acknowledged by 'Nathan' Chadbourn to John Chadbourn, recorded October 3, 1853, and a marginal entry on the record as follows: 'The word "Nahum" was recorded "Nathan" by mistake in the annexed record.' Upon these facts the supreme court of Michigan used the following language: 'We think the attempted correction of the record of the deed from Nathan Chadbourn to John Chadbourn by the deputy register was without authority of law.' The case was reversed and remanded for a new trial.

"In *Elliott* v. *Piersol*, 1 Pet. 328–341, [7 L. Ed. 164], it appears that the record of an acknowledgment to a deed was corrected by interlineations and erasures. There the Supreme Court of the United States disposes of this question in the following decisive form: 'Had the clerk authority to alter the record of his certificate of the acknowledgment of the deed, at

any time after the record was made? We are of opinion, he had not. We are of opinion, he acted ministerially, and not judicially, in the matter. Until his certificate of the acknowledgment of Elliott and wife was recorded, it was, in its nature, but an act *in pais,* and alterable at the pleasure of the officer. But the authority of the clerk to make and record a certificate of the acknowledgment of the deed was *functus officio,* as soon as the record was made. By the exertion of his authority, the authority itself became exhausted. The act had become matter of record, fixed, permanent and unalterable; and the remaining powers and duty of the clerk were only to keep and preserve the record safely.

" 'If a clerk may, after a deed, together with the acknowledgment or probate thereof have been committed to record, under color of amendment, add anything to the record of the acknowledgment, we can see no just reason why he may not also subtract from it. The doctrine that a clerk may, at any time, without limitation, alter the record of the acknowledgment of a deed, made in his office, would be, in practice, of very dangerous consequence to the land titles of the county, and cannot receive the sanction of this court.'

"In *Chamberlain* v. *Bell,* 7 Cal. 293, [68 Am. Dec. 260], it appears that the description of the premises intended to be conveyed was omitted, and afterwards supplied by interlineation. The court there said: 'Conceding the propriety of the interlineation, it could only impart notice from the time it was made, and could in no way impair or defeat a title previously acquired.' It is not decided, nor can it be logically inferred from this language, that the supreme court approved the correction of a deed by the change of the grantee's name upon the record by a different recorder, thirty-eight years after the original record was made, and that such a procedure established a merchantable title, free from doubt, upon which a purchaser must act at his peril, or be held to have forfeited all purchase money theretofore paid by him, without the existence of the deed in its actual form being brought home to him, or any proof adduced showing that the recorder had acted upon anything other than personal request.

"In those jurisdictions where it is held that a clerk may amend or correct his records which do not affect titles to real estate, it is the established rule that the correction must be made by the officer who committed the error. The court, in

*Baker* v. *Webber,* 102 Me. 414, [67 Atl. 144], thus states the rule: 'It is undoubtedly an established rule in New England, respecting the amendment of the records of a city or town, that the clerk who has made an erroneous or incomplete record may, while in office, or after a re-election to the same office, amend or complete such record according to the truth, being liable, like a sheriff who amends his return, for any abuse of the right. (Citing cases.) But without statutory authority one who was formerly a town clerk, but is no longer in office, cannot amend a town record made by him when clerk.'

"That a vendor, who seeks the harsh remedy of forfeiture, must show strict compliance with the terms and conditions of his contract, requires no citation of authorities; and that a clear title, free from doubt, or what has frequently been described as merchantable, must be exhibited by the vendor to the vendee, is also well established."

The third installment on the contract in question became due and payable on December 6, 1914, up to which time it appears that the abstract of title to the premises, though prepared, had not been delivered by the plaintiff to the defendants, and on the eighth day of December demand was made therefor, whereupon the same was delivered by the plaintiff to the defendants.

It appears from the transcript that the defendants waived any rights they might have had by reason of the nondelivery of the abstract, and stipulated that there was no breach in such delivery prior to said eighth day of December. It was further stipulated that the abstract furnished by the plaintiff to the defendants on the eighth day of December showed a conveyance from W. D. Vail to B. W. Robbins, from whom no mesne conveyances were shown vesting title in the plaintiff, and no other action taken than as hereinbefore set forth. Under such circumstances, the defendants were not in default at the time of the institution of plaintiff's suit. It may be stated that it further appears from the transcript that plaintiff, through one of his attorneys, informed the defendants that they would do nothing further in relation to the abstract.

It may be conceded that the plaintiff had, in fact, a good title, but that he failed to make exhibit thereof to the defendants, seems to us beyond question. The re-recording of the deed from Vail to Robben on January 15, 1915, and exhibit thereof to the defendants, would have laid a foundation for

maintaining an action wherein all proper parties defendant having been joined, judgment might have been entered by the trial court, finding plaintiff's title valid, quieting any claims of B. W. Robbins to said premises, establishing of record that the conveyance purporting to be made to Robbins was, in fact, made to Robben, and decreeing performance by the appellants within a reasonable time or suffer the alternative of forfeiture. However, the plaintiff did not elect to pursue this remedy, but chose rather to consider the contract at an end, himself absolved from all its obligations, and instituted this proceeding to quiet title and thus gain the advantage of the installment payments already made under the contract, even though he himself was the party in default. Under these circumstances, what are the rights of the vendees under such contract? In an exceedingly exhaustive opinion, the supreme court of this state, speaking through Justice Henshaw, in *Glock* v. *Howard etc. Co.*, 123 Cal. 10, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 716], thus lays down the rule: ''Now, in such contracts, upon a breach by the vendor of a covenant to convey, what courses are open to the vendee? Obviously these: He may stand upon the contract and sue at law for damages for the breach. Here, his recovery will be governed by section 3306 of the Civil Code; or, still standing upon his contract, he may go into equity, seeking its specific performance; or, he may sue at law to recover the amount that may have been agreed upon as stipulated damages; or, finally, treating the vendor's breach as an abandonment, he may himself abandon it when, the contract having thus come to an end, he may sue at law to recover what he has paid, in an action for money had and received; for, the contract being at an end, the vendor holds money of the vendee to which he has no right, and to repay which, therefore, the law implies his promise.''

To a similar effect is the case of *Boas* v. *Farrington*, 85 Cal. 535, [24 Pac. 787], where it is stated, in substance, that ''where a contract for the sale of land provided that the purchase money should be payable in installments, the first installment to be paid on the signing of the agreement, the title to be good or the money to be refunded, the party of the first part to furnish abstract of title to said land, and the vendor furnished an abstract which failed to show good title, the purchaser may rescind the contract and recover the money already paid, although the vendor, as a matter of fact, had a

good title to the property, if the vendor did not offer to remedy the abstract or cause a perfect abstract to be furnished before the time arrived for payment of the second installment.''

There, as here, the question was not so much the fact of good title as the failure of the abstract to show a title free from objections.

In *Seals* v. *Davis,* 25 Cal. App. 68, [142 Pac. 905], the vendee brought an action to recover money paid on account of an agreement to purchase real estate by reason of the vendor's attempted rescission, and the court there held: ''When a plaintiff seeks to recover money which he has paid upon a contract which the defendant has attempted to rescind, he may accept such rescission, and bring his action in the form of a common count for money had and received by the defendant to his use and benefit.'' Citing a number of authorities.

In *McNeil* v. *Kredo,* 31 Cal. App. 76, [159 Pac. 818], the right of the vendee was before the court upon the sufficiency of the complaint, but the right of the vendee to recover was again affirmed, the court saying: ''The complaint states the cause of action. It in effect alleged that the defendants without cause repudiated the contract, declared it canceled, and denied to plaintiff any right or interest therein. This being so, the plaintiffs were relieved from the obligation of further performance on their part, and were privileged to consider and accept the defendant's renunciation of the contract as a rescission of the same.'' Citing also a number of authorities.

In the case at bar, after the plaintiff had declined to do anything further in relation to the abstract in question or for clearing the title to the premises agreed to be conveyed, and had begun his action to foreclose the rights of the defendants under the contract, the defendants, within the time allowed for answering the plaintiff's complaint, surrendered the lands and premises to the plaintiff and filed a cross-complaint for the recovery of the installments already paid and damages suffered by reason of the plaintiff's breach. Under the authorities above cited it must be held that the defendants had a right to consider the contract as rescinded and prosecute their action for repayment of all installments paid, and also to recover whatever damages they had suffered by reason of the failure of the plaintiff to comply with his covenants therein contained.

The defendants' motion for nonsuit should have been sustained, and the trial court should have proceeded to ascertain and determine the amount of recovery to which the defendants as cross-complainants were entitled.

It follows, therefore, that the judgment of the trial court must be reversed, with directions to proceed with the further hearing of this matter in accordance with this opinion, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 11, 1918.