[Civ. No. 4823.   First Appellate District, Division ·Two.—April 23, 1924.]

# A. ADERHOLT, Respondent, v. JOSEPH H. WOOD, Appellant.

[1] VENDOR AND VENDEE — DEFAULT BY VENDOR — RESCISSION — RE-
COVERY OF PAYMENTS MADE.—Where the vendor under an execu-
tory contract for the sale of real property is at fault, and the
contract is rescinded, the vendee is entitled to recover his outlay
under the contract, but he must restore to the vendor whatever
of value he (the vendee) has obtained under it.

[2] ID.—RESCISSION BY CONSENT—RIGHTS OF PARTIES—MUTUAL RE-
LEASES.—If the parties by consent rescind an executory contract
for the sale of real property they thereby make a new contract
and their rights and obligations thereunder are to be determined
by all the rules relating to ordinary contracts; and it is not
improper or unusual for parties to contracts of this nature to cancel
them and release each other from all mutual obligations.

[3] ID.—RECOVERY OF PAYMENTS—INTENTION OF PARTIES—EVIDENCE—
PREJUDICIAL FINDINGS.—Where the statutes do not provide that
in such cases the vendee shall recover the payments made under
the contract, and where the contract of cancellation is silent on
the matter, the intentions of the parties may be determined by
reference to the conversations and communications had between
them leading to the execution of the contract of cancellation; and
in this action to recover the moneys paid by the vendee on
account of the purchase price of ˙real property, the evidence tended
unmistakably to show that the parties intended a complete re-
lease of all mutual obligations, and the failure of the trial court to
find in accordance with the evidence on that issue was highly
prejudicial to defendant.

[4] ID.—WRITTEN ꞌCANCELLATION—RESPECTIVE RIGHTS OF PARTIES—
INTENT.—When the parties to an executory contract for the sale
of real property agree in writing to cancel their original agree-
ment without mentioning the respective rights of the parties,
the rule that the vendor is entitled to a return of the prop-
erty, freed from the obligations of the contract of sale, and
the vendee is entitled to a return of the moneys paid by him

---

1.   See 4 Cal. Jur. 764; 6 Cal. Jur. 385; 27 R. C. L. 653, 656.
2.   See 6 Cal. Jur. 382; 6 R. C. L. 921.
3.   See 6 Cal. Jur. 264, 296; 6 R. C. L. 849.

on the purchase price of the property so returned, is not determinative, but the contract must be given a reasonable interpretation with the view of determining the intention of the parties.

(1) 39 Cyc., p. 2005.    (2) 13 C. J., p. 600, sec. 621 (1926 Anno.).
(3) 39 Cyc., p. 2002.    (4) 22 C. J., p. 1287, sec. 1715.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Reversed.

The facts are stated in the opinion of the court.

Ben S. Hunter and Bradford M. Melvin for Appellant.

Powell & Dow for Respondent.

NOURSE, J.—Plaintiff sued to recover the sum of $4,857.50 with interest, this being the amount which his assignor had paid on principal and interest upon a written contract with the defendant for the·sale of forty acres of land situated in Los Angeles county. The contract price for the sale of the land was fixed at twelve thousand dollars, three thousand dollars of which was paid upon the execution of the contract and the remainder thereof, with interest, was payable at specified dates. Plaintiff's assignor, the vendee under the contract, was unable to make his payments and from time to time requested and received further extensions and on numerous occasions urged the defendant to release him from the terms of the contract. On February 10, 1922, he addressed a letter to the defendant in which he stated definitely that he was unable to proceed further with the purchase and that he was directing his attorney to prepare a release and return of the ranch to defendant on the condition that he, the defendant, would cancel the agreement and release him from any further liability. This offer was accepted by the defendant and a few days thereafter he received from the vendee's attorney a document signed by the vendee designated "Cancellation of Agreement" and providing that the contract of sale "has been this day canceled by mutual consent." With

4.  See 6 Cal. Jur. 252, 271; 6 R. C. L. 835, 841.

this document he also received a quitclaim deed from the vendee remising, releasing and quitclaiming to the defendant all interest in the parcel of land covered by the contract of sale. The document designated "Cancellation of Agreement" was dated February 16, 1922, was acknowledged by the vendee before a notary public in the county of Storey, state of Nevada, on the same date, and was acknowledged by the vendor on the twenty-seventh day of March, 1922, in Hennepin County, Minnesota. The quitclaim deed was dated February 20, 1922, and was acknowledged by the vendee Dakin on the twenty-fifth day of February, 1922, in the county of Storey, Nevada, and by Margaret Dakin on the second day of March, 1922, in San Mateo County, state of California. The date of the delivery and exchange of these papers does not appear in the record, but it does appear that "both documents were received at the same time." After the exchange of these papers the vendee made an assignment of all claims and demands against the defendant to the plaintiff herein, who commenced this action on June 7, 1922. Defendant's answer admits the execution of the original contract and the payment of the money thereunder, but alleges that by the terms of the agreement dated February 16, 1922, taken with the quitclaim deed, the parties intended to and did effect a mutual cancellation and release of all obligations between them. The trial court found in accordance with the admissions of the pleadings on the material facts relating to the execution and cancellation of the agreement of sale. It also found that on the first day of April, 1922, the buyer executed and delivered the quitclaim deed to the defendant. In this respect the finding is unsupported by the evidence, as has been heretofore pointed out. The date of April 1, 1922, is the date of the recordation of the quitclaim deed in the office of the county recorder of Los Angeles county. It appears without contradiction that it was delivered to the defendant herein in Minneapolis some time during the month of March of that year at the same time when the cancellation contract was delivered to him.

Another finding which requires attention is that though the plaintiff's assignor on the 10th of February, 1922, wrote the defendant a letter offering to make a complete release of the obligations of the original contract, the defendant

did not accept said offer. The only evidence on this point is that the defendant answered this offer by telegram and, quoting from defendant's testimony, "I accepted the proposition that he made." This finding becomes important in connection with that portion of the defense raised by the defendant that the parties intended to make a complete release of all obligations one from the other growing out of the original contract of sale. Upon these findings the court rendered judgment for the plaintiff for the return of the full sum of principal and interest and the defendant appeals on a bill of exceptions.

As stated by respondent, the question at issue before us is, where, in the case of an executory contract for the sale of real property on which installment payments have been made, the parties mutually agree to a cancellation of the contract, is the vendee, in the absence of any agreement to the contrary, entitled to the return of the installments theretofore paid? It is argued in support of the judgment that the accepted rule in this state is that when the parties to an executory contract of this kind have abandoned it or it has been rescinded by mutual consent either party may recover money paid under it. [1] The authorities cited by respondent, however, all relate to the rescission of contracts in cases in which the vendor was at fault. In such a case the rule is without conflict that equity will restore the parties to *statu quo.* This principle is announced in section 3408 of the Civil Code and has been approved in numerous cases. The theory of these cases is that, where one party rescinds an executory contract on account of the default of the other, he is entitled to recover his outlay under the contract, but at the same time he must restore to the other party whatever of value he has obtained under it. Section 1691 of the Civil Code expressly provides that rescission can be accomplished only in such manner *except where effected by consent.* This exception is the important part in the consideration of cases such as presented in this record. [2] If the parties by consent rescind an executory contract they thereby make a new contract and their rights and obligations thereunder are to be determined by all the rules relating to ordinary contracts. It is not improper and it is not unusual for parties to contracts of this nature to cancel them and to release

each other from all mutual obligations. **[3]** Where the statutes do not provide that in such cases the vendee shall recover the payments made under the contract and where the contract of cancellation is silent on the matter, the intentions of the parties may be determined by reference to the conversations and communications had between them leading up to the execution of the contract of cancellation. In the case before us all evidence of such communications tended unmistakably to show that the parties intended a complete release of all mutual obligations, and the simultaneous delivery of the quitclaim deed is persuasive evidence of such intention. The failure of the trial court to find in accordance with the evidence on this issue was highly prejudicial to the case presented by the appellant. If the trial court had found in accordance with this evidence it would have necessarily followed that the intention of the parties in the execution of the cancellation agreement was to release each other from these obligations and that it was not the intention that the vendee should thereafter be entitled to recover the payments which he had paid in on the contract. This is especially true in view of the fact that the vendee had sole possession and occupation of the premises for a period of over three years, during which he had taken and retained all the profits therefrom. It is not reasonable to assume that, in view of the admitted fact that the property had greatly depreciated in value, the appellant would have knowingly consented to release the vendee from further payments under the contract and at the same time allow the vendee to attain the profits from the premises which he had received during the period when he was in possession without the payment of any rent.

**[4]** Respondent's case is based upon a rule of law which he draws from a number of California cases cited to the effect that upon a rescission of an executory contract of sale of real property "the vendor is entitled to a *return of the property,* freed from the obligations of the contract of sale, and the *vendee* is entitled to a *return of the moneys* paid by him on the purchase price of the property so returned." But this statement of the rule is incomplete. The vendee is entitled to a return of the moneys paid by him *less* the benefits he received under the contract. When, therefore, the parties contract in writing to cancel the original agree-

ment without mention of these respective rights, the rule as stated by respondent is not determinative, but the contract must be given a reasonable interpretation with the view of determining the intention of the parties.

The case is similar to the case of *Winton* v. *Spring,* 18 Cal. 451, the only difference in the facts being that in the cancellation agreement the vendee expressly surrendered possession of the premises whereas in the case before us this was done by the simultaneous ·delivery of a quitclaim deed. The supreme court in construing the cancellation agreement in the Winton case said (p. 454): "The plaintiff contends, that this agreement being canceled as above shown, the effect was, as in the ordinary case of a rescission of a contract, to put the parties *in statu quo,* and having paid the four thousand dollars in the execution of the agreement, he is entitled to recover it back. We think not. The agreement of cancellation evidently was intended to effect a complete settlement in regard to the subject; it discharges the parties from all covenants and agreements in the original contract, and provides for a surrender of the premises. Nothing is said or done in reference to the refunding of the four thousand dollars. If the intention was to place the parties *in statu quo,* and this were supposed to be effected by the use of the word *cancel,* as an equivalent to the word *rescind,* it is probable that language more unequivocal would have been employed. The latter clause of the agreement in respect to the possession would be tautological in this view; for the restoration of possession would follow from the use of the word cancel in the first 'line. Besides, it is to be supposed that the party in possession, having paid his money, would not abandon the possession, until he got a return of it, or some provision was made for securing it. He would scarcely have left so large an amount a matter of open account. Nor is it probable that the question as to the rents and profits of the land would be left unliquidated. It is much more probable that when parties come to an arrangement. of a business matter, they settle all the terms of the contract, than that they leave them unadjusted. The word 'cancel,' applied to the agreement, under the circumstances, means no more than 'doing away with' an existing agreement upon the terms and with the consequences mentioned in the writing.

What is not said, is excluded; and whatever was meant to be obligatory was expressed.''

The Winton case has not been overruled or criticised by any later decision of the supreme court, and, inasmuch as the opinion was based upon practically the same facts as we have before us, it seems to be decisive of the question presented.

Judgment reversed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 17, 1924.

All the Justices concurred.