[Civ. No. 6730. First Appellate District, Division One.—August 8, 1929.]

FRANK E. WINTER, Respondent, v. MARGARET J. KITTO, Appellant.

Lovett K. Fraser for Appellant.

John L. McVey for Respondent.

THE COURT.—The defendant is the owner of certain real property in Lake County. Early in 1927 the parties to the action and Fred T. Winter entered into negotiations for the sale and purchase of the property. On February 1st of that year a written agreement was drawn setting forth the terms of sale, in which the defendant was named as vendor and the plaintiff and Fred T. Winter, his brother, as vendees. The writing was signed by the plaintiff and the defendant, but not by Fred T. Winter. The terms of sale were $4,000, payable $250 in cash, a like sum on August 1, 1927, and the balance in semi-annual payments of the same amount, with interest. The writing further stipulated that upon the payment of the purchase price, with interest, the property should be conveyed to the vendees, but upon default in the payment of any installment of principal or interest, time being of the essence, all sums theretofore paid should, at the option of the vendor, be forfeited and retained by her as liquidated damages, in which event it was provided that "this agreement shall then become and be absolutely void and of no effect."

It appears that the plaintiff on February 1, 1927, paid to the defendant the sum of $600 on the purchase price, and thereupon went into possession of the property, but that Fred T. Winter neither had possession nor paid any part of the purchase price. On February 6, 1928, the defendant, through her attorney, served upon the vendees named a writing, signed by her, which, after reciting that default had been made in the payment of the installment of $250

which was payable on February 1, 1928, contained the following: "You and each of you are hereby notified that the undersigned elects to cancel said contract pursuant to the terms thereof, and that said contract is hereby canceled and is absolutely void and of no effect." Following the receipt of the notice, the plaintiff on February 9, 1928, sent the defendant's attorney the following letter:

"Dear Mr. Perkins:

"Received your notice of cancellation of contract re my purchasing Lake county property from Mrs. Kitto and I am at a loss to understand why this was sent to me.

"The last part of January I wrote to Mrs. Kitto about a lot I thought she might be interested in taking as a payment which would be more substantial than the regular payment due, and if she did not want the lot to let me know and I would send the payment Not hearing from Mrs. Kitto I naturally presumed she was considering taking the lot and of course I did not send the check.

"I have made several requests for the copy of the contract, also Mr. F. Fogal some time ago asked you to send it to him, but up to the present time it has not been received. I am entitled to a copy of this agreement, so please see that it is forwarded to me at your earliest convenience."

A letter from the attorney in reply contained the following: "I beg to remind you that at the present writing there is no contract existing between yourself and Mrs. Kitto, the contract dated February 1, 1927, having been canceled by Mrs. Kitto on February 6, 1928, by reason of your failure in the payment of the instalment of principal due February 1, 1928. . . . " The letter further stated that Mrs. Kitto would be willing to revive the contract upon receipt of the payment mentioned, but would not otherwise waive the breach.

It appears that shortly after the above correspondence the defendant went into possession of the property, but nothing further was done by any of the parties until March 5, 1928, when defendant filed an action against plaintiff and Fred T. Winter to quiet the title to the property. The latter defaulted, and the plaintiff herein having filed a disclaimer, a decree was entered adjudging Mrs. Kitto to be the owner of the property and that the vendees named

and all persons claiming under them be barred from asserting any claim or right or title therein.

The present action is one for money had and received. As defenses thereto the defendant set up the contract mentioned, alleging the default of the plaintiff and his covendee, and further pleaded as a bar the decree entered in the action to quiet title. The court found that the parties had agreed that their agreement should be reduced to writing and executed by each of them; that the writing mentioned was not signed by Fred T. Winter or delivered to the plaintiff, but was retained by the agent for the defendant. It was further found that the agreement was canceled by the defendant, the cancellation being acquiesced in by the plaintiff, and judgment was accordingly entered for the latter.

The defendant, who has appealed, contends that the judgment in the suit to quiet title was a bar to the present action and that the findings are unsupported.

As held in *Williams* v. *MacDonald*, 180 Cal. 546 [182 Pac. 29], a judgment, in order to operate strictly as a bar to a subsequent action, must have gone to the merits of the latter action, either in regard to some matters which the plaintiff must have made in order to entitle him to a recovery, or in regard to some affirmative defense which was a defense to the second action as well as to the first.

As shown by the record, the action to quiet title involved merely the title to the land in question; all that appears on the face of the judgment to have been adjudged being the title of Mrs. Kitto, her right to have such title quieted, and that judgment was entered upon the default of one defendant and upon the disclaimer of the other (who is the plaintiff here) of any claim or title to the land. In the above respects the facts of the present case are not distinguishable from those of *Heilig* v. *Parlin*, 134 Cal. 99 [66 Pac. 186], wherein it was held that decree quieting the vendor's title was not a bar to an action by the vendee for the return of the purchase money upon the ground that the vendor had rescinded the contract.

It appears that the contract in question was left by the plaintiff and defendant with the latter's agent, who drew the instrument, to await the signature of plaintiff's brother, who, for reasons not shown, failed to sign. It has been held that where an instrument has been executed by

only a portion of the parties between whom it purports to be made it cannot be enforced against those who have executed it (*Tewksbury* v. *O'Connell*, 21 Cal. 60; *Barber* v. *Burrows*, 51 Cal. 404; *Jackson* v. *Torrence*, 83 Cal. 521 [23 Pac. 695]; *Olson* v. *Lovell*, 91 Cal. 506 [27 Pac. 765]); but, as the court said in *Cavanaugh* v. *Casselman*, 88 Cal. 543, 549 [26 Pac. 515, 517]: "It is not the rule that a contract which on its face purports to be *inter partes* must invariably be executed by all whose names appear in the instrument before it will be binding on any. One reason why it is held in many of the cases that an agreement is not to be operative upon one until it has been signed by another, is that such signing is the consideration upon which the first signer agrees to be bound; but when a sufficient consideration for the agreement on the part of the first signer is shown to authorize its enforcement he cannot be released therefrom unless he shall show clearly that there were other considerations for his signing the agreement than those named in the instrument." The court in the same connection quoted with approval the following from Bishop on Contracts, section 348: "If by parol stipulation, or *a fortiori* if by the writing itself, the contract was not to be deemed complete until other signatures should be added, it without such addition will not bind those who have signed it; but if nothing of this appears the parties signing will be holden though even on the face of it the signatures of others were contemplated by the draughtsman." The same rule is stated in *Kurtz* v. *Forquer*, 94 Cal. 91 [29 Pac. 413].

In *Mullarky* v. *Young*, 9 Cal. App. 686 [100 Pac. 709, 710], wherein the language of the instrument indicated that the parties intended that all should be bound or none, it was held that a contract between two named parties of the first part and two named parties of the second part, which was signed by one only of each part, did not constitute a complete contract, but the court, referring to the above rule, said: "If in the case at bar the contract had been signed by both parties of the first part, the vendors, and although not signed by the parties of the second part, it was executed and acted upon then it would be deemed complete. . . . "

■ In the present case not only did the plaintiff receive a consideration for his signature, namely, the possession of the property, but it is manifest from his letter to the vendor's attorney that the contract was considered by him to be in force and effect notwithstanding the failure of his brother to sign. There having been an accession to its terms by the parties who signed, and part performance on both sides, neither could assert invalidity upon the ground urged by the plaintiff (*Sparks* v. *Mauk,* 170 Cal. 122 [148 Pac. 926]; *Minton* v. *Mitchell,* 89 Cal. App. 361 [265 Pac. 271]). Moreover, neither vendee—both being witnesses at the trial—testified that the signature of the plaintiff was conditional, nor that it was the understanding between themselves or with the vendor that the contract should not· be operative unless signed by all the parties named, the only testimony in this connection being that of the defendant, who testified that the plaintiff and his brother were to buy the property but that the contract was never signed by the latter.

We are satisfied that the circumstances shown do not reasonably support the conclusion that the contract was not intended to bind the plaintiff and defendant, and that the findings in this respect are not sustained by the evidence.

Plaintiff further contends that the correspondence shows a mutual rescission of the contract which entitles him to recover the amount paid.

In *Heilig* v. *Parlin, supra,* cited by plaintiff in support of his claim, a demand was served upon the vendee for the possession of certain real property agreed to be sold to the latter, with a notice that because of his failure to make certain payments the contract was "absolutely abandoned and determined." It is urged as the effect of that decision that the vendor by his notice elected to rescind the contract, thus giving the vendee the right to recover the payments made. We do not so understand the decision, as the court, after referring to a previous action to quiet the title to the property, wherein the question of the alleged rescission was not involved, said: "In the present case, however, the complaint directly alleges a rescission on the part of the vendor Parlin, and this allegation is not denied in the answer. In such case the vendee is clearly entitled to recover what he paid under and in pursuance

of the contract so rescinded." With the exception of the question of the effect of the previous decree quieting the title to the property the only question involved or decided was the vendee's right to recover the payments made under the contract where its rescission by the vendor was admitted by the pleadings.

 It has been held that after the vendee's breach the vendor may agree to a mutual abandonment or rescission, in which case the vendee would be entitled to recover the amounts paid. Such were the facts proved or admitted in the following cases wherein recovery was allowed: *Drew* v. *Pedlar*, 87 Cal. 443 [22 Am. St. Rep. 257, 25 Pac. 749]; *Phelps* v. *Brown*, 95 Cal. 572 [30 Pac. 774]; *Shively* v. *Semitropic etc. Co.*, 99 Cal. 259 [33 Pac. 848]; *Merrill* v. *Merrill*, 102 Cal. 317 [36 Pac. 675]; *Helig* v. *Parlin, supra; Gaume* v. *Sheets*, 181 Cal. 119 [183 Pac. 535]; *Bernardo* v. *Soderman*, 19 Cal. App. 161 [124 Pac. 866]; *Smith* v. *Jaccard*, 20 Cal. App. 281 [128 Pac. 1023, 1026]; *Burmester* v. *Horn*, 35 Cal. App. 549 [170 Pac. 674]; *Aderholt* v. *Wood*, 66 Cal. App. 666 [226 Pac. 950]. The same rule applies when there is a mutual failure to perform, the conditions of the contract being concurrent (*Cleary* v. *Folger*, 84 Cal. 316 [18 Am. St. Rep. 187, 24 Pac. 280]); and the vendee may also recover where the vendor is in default or refuses to be bound by the contract (*Chatfield* v. *Williams*, 85 Cal. 518 [24 Pac. 839]; *Merrill* v. *Merrill*, 95 Cal. 334 [30 Pac. 542]; *Duncanson* v. *Walton*, 111 Cal. 516 [44 Pac. 174]; *Carter* v. *Fox*, 11 Cal. App. 67 [103 Pac. 910]; *Seals* v. *Davis*, 25 Cal. App. 68 [142 Pac. 905]; *Robben* v. *Benson*, 37 Cal. App. 227 [173 Pac. 766]). But a vendee in default cannot recover where the vendor who is not in default stands upon the contract (*Bradford* v. *Parkhurst*, 96 Cal. 102 [31 Am. St. Rep. 189, 30 Pac. 1106]; *Joyce* v. *Shafer*, 97 Cal. 335 [32 Pac. 320]; *Glock* v. *Howard etc. Co.*, 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; and the right to retain the purchase money upon an unexcused default by the vendee is independent of any express clauses in the contract for the forfeiture of rights or the retention of payments as liquidated damages, such clauses being but declarations of what would have been the legal rights of the vendor without such provisions. (*Glock* v.

*Howard etc. Co., supra; Tuso* v. *Green,* 194 Cal. 574, 586 [229 Pac. 327].)

The grounds for the claim in the present case that the vendor rescinded the contract were the statements in the notice of default that she elected "to cancel the contract pursuant to the terms thereof," and that the same "is hereby canceled and is absolutely void and of no effect," and the statement by her attorney in his letter to the vendee that the contract by reason of the latter's default had been canceled and was no longer existing. It has been held that a provision in a contract to the effect that a violation of any of its terms or conditions by either party should work a forfeiture and the contract should thereupon become void and of no effect means only that the rights of the party violating it cease, and as to him and to that extent the agreement becomes void and of no effect. The contract, however, remains in effect so as to protect the rights of the innocent party and to enforce the obligations of the delinquent. (*Central Oil Co.* v. *Southern Refining Co.,* 154 Cal. 165 [97 Pac. 177].) The contract having provided that in the event of a default on the part of the vendee all sums theretofore paid should at the option of the vendor be forfeited and retained by her, and the agreement thereupon "become and be absolutely void and of no effect," the notice stating that she elected to cancel the contract pursuant to the terms thereof should be construed therewith; and when so construed it is evident that she did not intend a technical cancellation or rescission, but merely to terminate the vendee's rights under the contract pursuant to its provisions. Such was the view of the court in *Hyman* v. *Harbor View Land Co.,* 46 Cal. App. 98 [188 Pac. 828], wherein a vendor, in a notice to the vendees following their default, stated that he rescinded the contract, and it was held not to be his intention to make a technical rescission, but only to terminate the contract in accordance with its terms, which were that in the event of a default of the vendees, time being of the essence, the vendor might at his option rescind the contract, and all moneys paid thereon should thereupon be forfeited and retained by him as rent and liquidated damages. Also, in *List* v. *Moore,* 20 Cal. App. 616 [129 Pac. 962], a contract for the purchase of real property made time of the essence,

and provided that, in the event of his failure to comply with its terms, the vendee should forfeit all right thereto and the vendor released from all obligation to convey. In a written extension granted the vendee it was provided that in case of a default by the latter the contract, which was deposited in escrow, should be surrendered to the vendor, and thereupon "be considered canceled and terminated," and also that "upon the surrender of the said contract . . . the same is to be null and void and of no further effect. . . . " The vendee having defaulted, he was notified that the contract was "at an end." The action was brought to recover the amounts paid by him on the purchase price, a rescission by the vendor being alleged. A judgment for the defendants was affirmed on appeal. In holding that the notice did not constitute a rescission, or give to the purchaser the right to recover any part of the purchase money paid, the court said: "It would be rather singular if under the circumstances the mere notice given to the contemplated purchaser by the owner of the land of a fact that was expressly provided in the agreement and of which each had knowledge, would operate to change the legal effect of said fact to the detriment of the owner. The contract was at an end either with or without any formal notice. . . . Rescission implies of course the restoration of the parties to the same situation and the same terms as existed when the contract was made. It requires the surrender of any consideration or advantage secured by either party; but the only fair interpretation of the notice here, considered in connection with the terms of the contract, is that no further affirmative action should be taken by either party to execute the contract, and that the status of each should remain as provided without further change."

While, as held in *Glock* v. *Howard etc. Co., supra,* a vendor may, "if his generosity prompts him to do so," agree with a vendee in default for a mutual abandonment and rescission of the contract, in which event the vendee would be entitled to repayment, the facts of the present case do not fairly support the conclusion that the vendor, to use the language of the court in *List* v. *Moore, supra,* "was so gratuitously generous as to voluntarily surrender the valuable rights secured to her by the terms of the contract."

We are satisfied the evidence was insufficient to support the findings of the trial court in this and the other respects mentioned, and the judgment is accordingly reversed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 7, 1929.