On re QUARTZ CRYSTAL PRODUCTS CO.
No. 44274.

District Court, S. D. California,
Central Division.

June 6, 1947.

Charles A. Thomasset, of Los Angeles, Cal., for U. S. Machinery Co.

George T. Goggin, of Los Angeles, Cal., for Trustee.

YANKWICH, District Judge.

On January 28, 1947, the Referee made an Order in the above matter upon the petition in reclamation of the U. S. Machinery Company in which the petitioner sought possession of certain machinery and equipment in the possession of the Trustee. The Order determined that the personal property was an asset of the bankrupt estate, that the petitioner was not entitled to its possession, and that it owed to the Trustee the amount of $1331.85. The basis for the Order was that two agreements in writing entered into by the U. S. Machinery Company and the bankrupt dated November 10, 1944, and not recorded until December 18, 1944, were invalid under Section 2980 of the Civil Code of the State of California.

This is a petition to review the Order.

The Referee in his certificate on review admits that the petitioner has correct-

ly set forth his ground for review in this language:

"That petitioner alleges that each of said agreements was executed on December 12, 1944, and recorded on December 18, 1944, and is valid as to the Trustee herein and the creditors of this estate and that the said order, and the whole thereof, is erroneous and that the Honorable Referee herein erred in refusing to grant the relief prayed for in said petition for reclamation of this petitioner."

A study of the memorandum opinion which the Referee filed convinces me he arrived at the wrong conclusion, because he misinterpreted the meaning of the phrase "its execution" in Section 2980 of the Civil Code of California, the material portion of which reads:

"Every conditional sales contract, lease, and bailment or feeder agreement covering live stock and other animate chattels and every conditional sales contract of equipment and machinery used or to be used for mining purposes, must be acknowledged, or proved and certified, and must be recorded within twenty (20) days *after its execution* in the office of the recorder of the county where the buyer, the party feeding, the lessee or the bailee, respectively, resides at the time he executes such contract, lease, feeder or bailment agreement, or in case the buyer, the party feeding, the lessee or the bailee is a nonresident of this State, in the office of the recorder of the county or counties where the property involved is located at the time the contract, lease, feeder or bailment agreement is executed by the buyer, lessee, or bailee or feeder, and a contract of conditional sale of equipment and machinery used or to be used for mining purposes shall also be recorded in every case in the county where the property is situated otherwise, it shall be void as to the lien or interest of the seller, the lessor, bailor or owner against bona fide purchasers, encumbrancers and those having no actual knowledge of the contract, lease, feeder or bailment agreement who become creditors of the buyer, the party feeding, the lessee or the bailee, while said property is in the possession of any of the last mentioned parties." (Emphasis added)

The Referee is not so much to blame because other California statutes, to be referred to, and bearing on the subject, and many of the cases to be cited herein, were not called to his attention.

And here I must call attention to a fault which is apparent in many of these reviews, i. e., that counsel, who specialize in bankruptcy, especially those who appear for Trustees, seem to rely too much on general "equitable bankruptcy principles" contained in *Collier* and *Remington,* and pay too little attention to the fact that contractual rights in bankruptcy are determined by the laws of California and the decisions interpreting them. Some time ago, I had before me a review in which the Referee had determined that the Trustee had certain rights to an automobile because the bankrupt, being indebted to a bank on several obligations, made certain payments which *were not* applied to the automobile indebtedness. To my surprise, I discovered that, *at no time,* had the Referee's attention been called to a section of the Civil Code of California, Section 1479, which permitted the bank to so apply the money.

In another matter, the point upon which the review turned was the effect and manner of service of process on a dissolved corporation. That, too, depended on California statutes to which the Referee's attention was not called by either side. California Code of Civil Procedure, § 411(6), Civil Code, Sec. 402a.

In the case before us, the Referee was induced to disregard binding California law entirely. His memorandum opinion fully demonstrates this. For, while indicating why he disbelieved *uncontradicted* testimony as to the date of the execution of the instrument—as well as the stipulation that the notary who took the signature of the officer of the U. S. Machinery Company would testify that the instrument was signed and acknowledged before him on December 12, 1944,—he proceeds to determine that the lease-contract violates Section 2980 of the Civil Code of California without referring to any cases interpreting the section or defining execution and ignoring, *as will appear later,* even those which were cited to him in the briefs. He bases his decision on his

inferences from facts. As to the law, he contents himself with a reference to the rather nebulous "equity powers of the bankruptcy court" (Memorandum Opinion, Page 6, Line 24). Cases depending on statutory interpretation *cannot* be determined by general references to bankruptcy powers.

And now to the problem before us.

I advert to the fact that this is another of those cases in which the "security" was not one given to an outsider, but was given for a part of the purchase price. Consequently, the approach to the problem is that laid down by myself in Re Mercury Engineering Company, Inc., D.C.Cal., 1946, 68 F.Supp. 376, which was recently sanctioned by the Circuit Court of Appeals for the Ninth Circuit in Citizens National Trust & Savings Bank of Los Angeles v. Gardiner, 161 F.2d 530.

It may well be that the object of this section, as I stated some years ago, in Re Great Western Petroleum Corporation, D. C.Cal., 1936, 17 F.Supp. 247, 250, is to protect creditors against claims to property in possession of a bankrupt on the basis of which the creditors may have extended credit. But the fact here is, as in the Mercury Engineering Company case, supra, that the persons who claimed rights under the lease or conditional sales contract were the very persons who furnished the machinery which was not paid for. And so we come to the main question.

The Referee took the view that, because one party to this lease contract or the conditional sales contract—the bankrupt —had signed and executed the instrument, this was "an execution" of the instrument within the meaning of the section. This interpretation disregards entirely the law of California. We do not need to speculate as to what "execution" means because Section 1933 of the Code of Civil Procedure, which has been in effect since 1872, tells us:

"The execution of an instrument is the subscribing and delivering it, with or without affixing a seal". California Code of Civil Procedure, § 1933.

The Courts of California and the Circuit Court of Appeals for the Ninth Circuit have held that this section means exactly what it says, i. e., it means *subscribing not by one party, but by all the parties who are required to sign it and delivering it to the party for whose benefit it is made, or delivering it for record so as to make it notice to the world.* In the case of a lease contract or contract of sale of personal property, delivery means delivery of the instrument, *the lease contract,* to the lessee after it has been signed by both the lessor and lessee, whether it is to be recorded or not. And when an instrument which, *on its face,* shows that it was intended to be signed by several parties, is signed by one only of the parties to be bound, and is in the possession of others who are also supposed to sign it, there is no "execution" within the meaning of California law until *all the parties have executed it and delivered it to the others or recorded it.* See, McCarthy Co. v. Commissioner of Internal Revenue, 9 Cir., 1935, 80 F.2d 618, and California cases cited at page 620. This is also the general rule. See, 33 C.J.S., Execution, page 120.

In 17 C.J.S., Contracts, § 62 sub. sec. (a), pages 411, 412, it is said:

"It is held in numerous cases that, *where an instrument has been executed by only a portion of the parties between whom it purports to be made, it is not binding on those who have executed it.* The cases so holding are usually those in which the parties executing the instrument would have a remedy by way of indemnity or contribution against the other parties named, which remedy is lost by the failure of such other parties to execute the instrument. The question as to whether those who have signed are bound is generally to be determined by the intention and understanding of the parties at the time of the execution of the instrument. *The reason for holding the instrument void is that it was intended that all the parties should execute it and that each executes it on the implied condition that it is to be executed by the others, and, therefore, that until executed by all, it is inchoate and incomplete and never takes effect as a valid contract, and this is especially true where the agreement expressly provides, or its manifest intent is,*

*that it is not to be binding until signed."* (Emphasis added)

In Coen v. American Surety Company of New York, 8 Cir., 1941, 120 F.2d 393, 397, it is said:

"Under these authorities the execution of a written contract includes three acts: (1) *Signing* and (2) *unconditional delivery by the promisor* and (3) *acceptance by the promisee."*

In Barber v. Burrows, 1876, 51 Cal. 404, 405, 407, one of the earliest California cases on the subject, it appeared that the instrument called for execution by four persons. Only three executed it. The Court, in a very brief, opinion, laid down *what has since been the law of California,* by saying:

"The instrument of September 2, 1872, was never completely executed. It is evident upon an inspection of the writing itself that *it was intended to be signed by all the parties to the contract upon which it was indorsed.* These parties were the two principals in the contract and the two sureties upon the bond attached to and forming a part of the contract. It was signed by but three of these persons." (Emphasis added)

This principle was declared later in Emeric v. Alvarado, 1884, 64 Cal. 529, 2 P. 418, in a very elaborate discussion which continues for several pages (see 64 Cal. at pages 578, et seq., 2 P. at pages 448 et seq.) —a case which the Referee had before him. This case specifically lays down the rule that where an instrument shows on its face that *it cannot become effective unless signed by all parties, it is not executed until it is so signed, and delivered.* This doctrine finds sanction also in Williams v. Kidd, 1915, 170 Cal. 631, 650, 151 P. 1, 8, Ann.Cas.1916E, 703, where the Court says:

"Further it is to be noted that 'execution' is a word of well-defined legal meaning, and is here employed with that meaning. 'Execution' *includes effective delivery."*

In Sparks v. Mauk, 1915, 170 Cal. 122, 123, 148 P. 926, it is said:

"It is the undoubted rule that, where the contract contemplates the execution of it by signing, either party has the right to insist upon the condition, and mere acts of performance upon the part of one who has not signed will not validate the contract. Tewskbury v. O'Connell, 21 Cal. 60; Spinney v. Downing, 108 Cal. 666, 41 P. 797."

See also, Jackson & Thomas v. Torrence, 1890, 83 Cal. 521, 523, 538, 539, 23 P. 695; Hartwell v. C. Ganahl Lumber Co., 1908, 8 Cal.App. 733, 97 P. 901; Winter v. Kitto, 1929, 100 Cal.App. 302, 279 P. 1024; Anthony Macaroni Co. v. Nunziato, 1935, 5 Cal.App.2d 588, 43 P.2d 315.

The latest case on the subject is Wilk v. Vencill, Cal.App., 1946, 173 P.2d 669, 670, where very pithily Mr. Justice Doran says:

"The property described was owned in joint tenancy; the contract was signed by only one of the owners, *hence the execution of the instrument was incomplete.* Barber v. Burrows, 51 Cal. 404." Emphasis added.

Of course, when a contract is executed by a party to be charged, there may be circumstances under which, as between him and the party who did not sign, he may be held to it, especially when the other side has performed. But here we are not dealing with such a situation. We are dealing with a requirement which makes an instrument invalid unless it has been recorded within a certain time after "execution." So that in determining what "execution" means, we must look to the contract to see if it is unilateral or bilateral. A glance at the lease contract shows it to be the type of contract which would have conferred no rights on the bankrupt unless signed by the company which owned the machinery. The first sentence of the contract reads:

"The U. S. Machinery Company, hereinafter referred to as the Lessor, leases to Quartz Crystal Products Co., P.O. Box 4, San Andreas, California, hereinafter referred to as the lessee, the following machinery and equipment, for use in Calaveras County, State of California, to-wit:"

The contract contains the usual conditions, reserves title, recites that "the full agreement between parties is contained herein," and provides for signature by an agent of the "U. S. Machinery Co." and for acceptance by the lessee in this form:

"Accepted: Quartz Crystal Products Co.

"Raymond I. Biggy

"John W. Buol

"James F. Collins"

It is not disputed that Biggy, Buol and Collins, composing the Quartz Crystal Products Co., signed and acknowledged the instrument before a Notary on November 14, 1944. But they acquired no rights under it until it was also executed by the U. S. Machinery Company, the owner of the property. The record is undisputed that it was signed by them and acknowledged before a Notary on December 12, 1944, and thereafter sent for recordation in the County where the machinery was located and actually recorded, *at the request of the U. S. Machinery Company,* on December 18, 1944. The Findings of the Referee to the contrary find no support in the record or in the law. The Referee seems to think that it should have taken only two or three days for the U. S. Machinery Company to have one of its officers execute the instrument and record it. He would, therefore, penalize them and deprive them of the benefit of the Section because of delay. I find nothing in the law of California or in Federal law which would warrant us penalizing the owner of property for delay in executing such an instrument. We are not dealing with a section of the type I had under consideration in Re Mercury Engineering Co., supra, where I had to determine what is or what is not a "reasonable time." The Code Section under consideration has saved us the trouble. It has fixed the time—twenty days "after execution." As "execution" means signing by both parties and delivery, without which the instrument was not effective, we cannot penalize the party whose property it was by insisting that when one party signed it, they should have signed it within two or three days. *For that is not what the law says.* The law says simply that it "must" be recorded within twenty days after "execution." The record shows that it was not fully executed until December 12, 1944, when the owner of the property, without whose signature the contract conferred no rights, executed the instrument. It was recorded six days after such execution. The fact that, in the meantime, the bankrupt may have had possession of the property under this *unexecuted* contract, does not alter the rights of the lessor.

It follows that the Referee interpreted the law incorrectly and that his order dated January 28, 1947, must be and is, hereby, reversed.