[No. 19075.	Department Two.	February 16, 1925.]

*In the Matter of the Estate of* FRED KUHN, *Deceased.*
JENNIE KUHN, *Personally and as Administratrix,*
*Appellant,* v. HELENA KUHN *et al.,*
*Respondents.*[1]

HUSBAND AND WIFE (48, 98)—VENDOR AND PURCHASER (31)—COMMUNITY PROPERTY—EXECUTORY CONTRACT FOR LAND—TITLE—RIGHT OF HEIRS. Since an executory contract for the sale of real estate creates no title, legal or equitable, in the vendee, property held thereunder and not paid for at the time of the death of the wife, is not community property.

EXECUTORS AND ADMINISTRATORS (99)—ADVANCES BY ADMINISTRATOR. Advances made by a widow and administratrix from her personal earnings after the death of the husband, turned in as a loan to the estate, must, in final settlement, be returned to her and is not barred by failure to present a claim therefor.

TOLMAN, C. J., dissents.

Appeal from an order of the superior court for Thurston county, Wright, J., entered September 30, 1924, decreeing the distribution of an estate upon final account of the administratrix. Reversed.[2]

[1] Reported in 233 Pac. 293.

[2] Pending on rehearing.

*P. C. Kibbe* and *Vance & Christensen,* for appellant.
*Frank C. Owings* and *T. F. Mentzer,* for respondents.

HOLCOMB, J.—This is an appeal from an order of distribution on the final account and petition for distribution of the administratrix of the estate of Fred Kuhn, deceased.

In 1902, the deceased and his then wife entered into a contract of purchase of real estate. He and his then wife lived upon the real estate until March 28, 1906, when his wife died, leaving the children, who are heirs, surviving her. The contract of purchase of the real estate in question provided for payments aggregating $1,200, of which $300 had been paid at the time of the death of the first Mrs. Kuhn, leaving a balance of $900 to be paid on the place. A deed to the real estate was secured August 16, 1906, five months after the death of the first Mrs. Kuhn, the property being deeded to Fred Kuhn. At the time of the death of the first Mrs. Kuhn, there had been very little improvement made upon the real estate. Deceased and his children continued to live on the real estate until his death, and some of the children remained there until the trial of this case. On January 29, 1909, deceased married appellant, and they lived there until the time of the death of deceased, which occurred December 5, 1918. After the death of the first Mrs. Kuhn and his marriage to appellant, deceased cleared some land, erected barns, put in lights and water, and built fencing, the cost of the improvements, not counting the labor of himself and family, aggregating $2,975. The real estate was sold during the administration for $7,000, this price including farm equipment, which was personal property.

After the death of Fred Kuhn, the administratrix carried on the farming operations for a year and a

half. After the death of deceased, appellant worked at nursing and keeping sick people, at which she earned more than $400, and turned it into the estate. She asked for its return in the final account. This the trial court refused upon the ground that it was a claim for money loaned to the community and was barred because no claim had been presented by her as provided by the statute.

The trial court allowed $200 as attorney's fees, $250 as administratrix fees, $3,000 was set over to the widow out of the separate estate of deceased, and decided that $1,500 of the moneys on hand was community property. There remains $5,900 of the moneys of the estate to be distributed.

There is no doubt that the court erred in holding that the real estate was the community property of the deceased and the children of his first wife. We have so held in a long line of decisions announcing the principle that such a contract, while it remains executory and forfeitable, creates no interest in the land in the vendee, and that he has no legal or equitable title to, or interest in, the land until the contract has been fully performed. *Churchill v. Ackerman,* 22 Wash. 227, 60 Pac. 406; *Younkman v. Hillman,* 53 Wash. 661, 102 Pac. 773; *Tieton Hotel Co. v. Manheim,* 75 Wash. 641, 135 Pac. 658; *Converse v. LaBarge,* 92 Wash. 282, 158 Pac. 958; *Schaefer v. Gregory Co.,* 112 Wash. 408, 192 Pac. 968.

Respondent relies largely upon the decision of this court in *Ahern v. Ahern,* 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912, where this court held that the title was acquired by the community. But in that case everything had been done to earn the title. As was stated in the case, the community had done all the law required it to do, and equitable title had vested, which is not true in the case at bar. The community had paid only

$300 of the consideration of $1,200 to be paid for the land. At the most the community had an interest only in the $300, which would be represented by the sum of $150. Of the remaining $900 which was paid for the land, decedent paid it, and therefore he acquired the property as separate estate. Decedent and the children of his first wife were not tenants in common in anything. No equitable title had been acquired by decedent and the heirs of his first wife to the real estate. There was no title of any kind, either legal or equitable, to the real estate when the first wife died. Hence the remaining portion of the purchase price paid by decedent and the amount paid for improvements were part and parcel of his separate estate. *Yarwood v. Cedar Canyon Consol. Min. Co.*, 37 Wash. 56, 79 Pac. 483.

There is no doubt that the allowance of $3,000 to the widow out of the separate estate of decedent was proper, and it is not appealed from by respondent. Nor are the allowances of $200 to the attorneys and $250 to the administratrix. There is yet the sum of $50 to be paid to the doctor who attended deceased, as the result of a compromise made by the administratrix, and we are of the opinion that the $400 advanced by the administratrix after administration was instituted upon the estate must be repaid her. This was money paid out by her out of her own personal earnings. It was not paid by the community of which she was a member, nor to the community of which decedent and his children were members, but was paid to the estate of decedent.

Consequently, of the $5,900 to be distributed, there should first be deducted the $3,000 to the appellant as the widow, $250 to the administratrix, $200 to her attorney, and $50 to the physician should then be deducted, and then the $400 advanced by the adminis-

tratrix. These allowances total $3,900, and leave $2,000 to be divided between appellant as the widow of deceased, and the children of his first wife. This should be distributed under the statute, one-half to the widow and one-half to the children, from which should be deducted from the share of the widow and added to that of the children the $150 coming from the community estate of the first wife.

The decree is therefore reversed with costs, and with instructions to render one in conformity herewith.

MACKINTOSH, PARKER, and MITCHELL, JJ., concur.

TOLMAN, C. J. (dissenting)—For the reason stated in my dissenting opinion in *Ashford v. Reese, ante* p. 649, 233 Pac. 29, I cannot concur with the majority.