SUZANNE PIERSON, a *femme sole,* v. NATHAN D. BILL, *et al.*

189 So. 679
Opinion Filed April 25, 1939
Rehearing Denied June 22, 1939

*A. Melrose Lamar* and *Paty, Warwick & Mooney,* and *Petteway & Gwynn,* for Appellant;

*Williamson, Cain & Bougher, L'Engle & Shands,* for Appellee.

*Wm. H. Rogers,* as *Amicus Curiae.*

TERRELL, C. J.—In December, 1933, Appellee Nathan D. Bill became interested in the purchase of lots 484, 486, 488, 490, and 492, Poinciana Park, Second Addition to Palm Beach Florida. He learned through D. F. Goodell and Robert E. McNeill, officers of Central Farmers Trust Company, and designated as his agents to negotiate the purchase, that said lots were owned by A. Madeleine Carey and that they were encumbered by a first mortgage in favor of Central Farmers Trust Company, a second mort-

gage in favor of Harry F. Shriver, besides numerous past due and unpaid municipal, county, and state tax liens, all amounting to approximately $35,000. Both mortgages and some of the tax liens were then in process of foreclosure.

Mrs. Carey agreed to sell the lots including the appurtenances, subject to the first and second mortgages and the tax liens for $3,500, making a total consideration of $38,500. Bill placed his check for $39,000 in the hands of Goodell and McNeill with instructions to purchase the property and secure cancellation of the mortgages and tax liens.

Bill did not want to be known in the transaction so McNeill purchased the lands from Mrs. Carey by deed executed in his name, dated January 2, 1934, and recorded two days later in the Clerk's office in Palm Beach County. After he acquired title to the lots, McNeill discharged the two mortgages and the tax liens and on January 10, 1934, by Special Warranty Deed conveyed them to Union Trust Company of Springfield, Massachusetts, which was acting as trustee for Bill in other matters. The latter deed was executed as directed by Bill and was duly recorded January 11, 1934.

On January 13, 1934, two days after recordation of the deed from McNeill to Union Trust Company, there was filed for record in Palm Beach County a mortgage from Frederick Foster Carey to Suzanne Pierson, dated October 13, 1925, securing the payment of $24,000 and encumbering the same property described in the deed from McNeill to Union Trust Company. It will be observed that the latter mortgage was withheld from record eight years and three months from date of execution and was recorded two days after the deed from McNeill to Union Trust Company was recorded, neither McNeill nor Union Trust Company knowing anything of its existence.

In May, 1934, Union Trust Company commenced this suit by bill in equity in which Suzanne Pierson, the mortgagee in latter mortgage, was named defendant. The bill of complaint prayed that the mortgage from Frederick Foster Carey to defendant be decreed to be void as against Bill and his trustees, McNeill and Union Trust Company. Suzanne Pierson filed her answer, counterclaim, and motion to dismiss the Bill of Complaint. On the joint motion of Bill and Union Trust Company, Bill was substituted for Union Trust Company as the party complainant and an amended bill of complaint was permitted to be filed by him. The reason for this substitution of parties was that Bill was the real party in interest and that Union Trust Company had at all times acted as trustee for him.

The amended bill of complaint deraigned Bill's title from Frederick Foster Carey and proffered as defense to the Pierson mortgage his title acquired through McNeill and Union Trust Company, the resulting trust vested in McNeill and Union Trust Company in his favor, the long delayed filing and recording of the Pierson mortgage, and the status of Bill as an innocent purchaser for value and without notice. It prayed that the Pierson mortgage be decreed to be null and void as against Bill, that it be quieted as a cloud on his title and for relief not essential to recite.

The answer of Suzanne Pierson challenges the material allegations of the amended bill of complaint and contends that the resulting trust vested in McNeill and Union Trust Company in favor of Bill is invalid and unenforceable, that the deed from McNeill to Union Trust Company is void and that the title acquired by them through it is invalid because Union Trust Company was at the time a foreign corporation and has never qualified in this State and that McNeill and Bill are not innocent purchasers for value and without notice of the Pierson mortgage.

The counter claim of Suzanne Pierson prayed among other things that her mortgage be foreclosed against Bill, McNeill and Union Trust Company. Union Trust Company also filed an answer in which it admitted the allegations of the Bill of Complaint. We deem it unnecessary to refer to other pleadings and proceedings. On the issues thus made testimony was taken, and final decree was entered in favor of Bill, from which this appeal was prosecuted.

The essential facts involved in this case are not disputed. Only questions of law are presented. It is first contended that the deed from McNeill to Union Trust Company is void in its inception and the title conveyed thereby invalid because Union Trust Company was a foreign trust company and not qualified to do business in this State.

Sections 6026 and 6145, Compiled General Laws of 1927 define the duties of foreign corporations and trust companies with reference to qualifying to transact business in this State but both acts except from the duties so required the right to acquire, hold, and dispose of property on the part of such companies or corporations. Neither are they precluded from defending title to property held by them. It is not shown or contended that Union Trust Company did more than this. Brecht, *et al.*, v. Bur-ne Co., 91 Fla. 345, 108, So. 173; Girard Trust Company v. Tampa Shores Development Co., 95 Fla. 1010, 117 So. 786; Ocean & Lake Realty Co. v. Craigin, *et al.*, 97 Fla. 452, 121 So. 460; Pape Inc. v. Finch, 107 Fla. 425, 136 So. 496; Hogue v. Morrison Construction Co., 115 Fla. 292, 156 So. 377.

In this case, Union Trust Company being the foreign trust company in question is not the plaintiff and is not attempting to maintain the suit. The mere fact that McNeill executed the deed to it would not vitiate or ad-

versely affect its title. It has done nothing that the law does not in clear terms warrant.

It is next contended that the resulting trust vested in Union Trust Company in favor of Bill cannot be proven by parole and if it could, it cannot be enforced in equity because it is not based on an instrument in writing.

In this case, Union Trust Company repeatedly admitted the resulting trust held by it in favor of Bill and McNeill has never denied it. This is sufficient affirmative proof of the trust involved here. It has little if any relation to the Pierson mortgage and it is not disclosed that Mrs. Pierson has any basis on which to question it but if she has, the proof by parole of the existence of and the enforceability of such trusts has frequently been approved in this State. It is not essential that they be based on a written instrument. Dewhurst, et al., v. Wright, 29 Fla. 223, 10 So. 682; Murrell v. Peterson, 59 Fla. 566, 52 So. 726; Lofton v. Sterrett, 23 Fla. 565, 2 So. 837; Booth v. Lenox, 45 Fla. 191, 34 So. 566; Sorrells v. McNally, 89 Fla. 457, 105 So. 106; Quinn v. Phipps, 93 Fla. 805, 113 So. 419; Walker v. Landress, 111 Fla. 356, 149 So. 545.

The concluding and real question with which we are confronted being the one on which the Chancellor disposed of the cause is whether or not Bill acquired his title through McNeill and Union Trust Company as an innocent purchaser for value and without notice of the Pierson mortgage.

Bill contends that McNeill and Union Trust Company, his trustees, acquired the legal title to the lots in question as innocent purchasers for value and without notice actual or constructive of the Pierson mortgage which was recorded two days after the recordation of the deed from McNeill to Union Trust Company, it being at the time eight years and three months old. Bill acquired his equi-

table title through said trustees and invokes the protection afforded him by the recording statute, Section 5698, Compiled General Laws of 1927, as follows:

"No conveyance, transfer or mortgage of real property. or of any interest therein, nor any lease for a term of one year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law; nor shall any such instrument made or executed by virtue of any power of attorney be good or effectual in law or in equity against creditors or subsequent purchasers for a valuable consideration and without notice unless the power of attorney be recorded before the accruing of the right of such creditor or subsequent purchaser."

. This Act has been the law of this State for more than one hundred years. It makes recordation according to law of any mortgage or deed a prerequisite to validity against creditors or subsequent purchasers for value unless they are shown to have had notice thereof from some certain source and it does not require them to search beyond the record in the Clerk's office for these sources. Section 4858, Compiled General Laws of 1927, prescribes the manner of the recordation which is in the Clerk's office in a book for that purpose.

Mrs. Pierson admits that her mortgage was not on record at the time Bill acquired his equitable title but she contends that he had both actual and constructive notice of it. Her sole reliance for actual notice to Bill is the fact that he was told by the witness W. C. Thatcher that if he purchased the lots in question, he would buy a law suit.

An examination of the evidence discloses that when Thatcher made this statement to Bill, he had no knowledge whatever of the Pierson mortgage, that he made no refer-

ence to it but that he had in mind the two recorded mortgages and the tax liens which were in litigation. He said that he knew nothing about the title except what Bill had told him. In this situation, there can be nothing to the contention that Bill had actual notice of the Pierson mortgage.

As a basis for constructive notice, Mrs. Pierson contends that, (1) the deed from Alcock to A. Madeleine Carey was without consideration, (2) the note secured by the mortgage from Carey and wife to McMillan was non negotiable, (3) the mortgage from Carey and wife to Shriver contained no warranty, (4) the deed from Carey to McNeill was in effect a quit-claim deed, and (5) the deed from McNeill to Union Trust Company was a deed of limited warranty.

Considered singly or collectively, we find nothing in law to support any of these contentions. The Alcock deed makes no reference whatever to the Pierson mortgage; besides it was based on a valuable consideration and was in every respect regular. As much may be said in favor of the Carey note. The fact that it was non negotiable is nothing strange as notes are frequently executed in this manner. Neither does the fact that the Shriver mortgage failed to carry warranty and that the deed from McNeill to Union Trust Company was a special warranty convey any notice whatever of the Pierson mortgage. Everyone of these instruments are regular and in form recognized by law. The rule is well settled that a limitation of the covenant of warranty is not sufficient to put a prudent purchaser upon inquiry even in states in which a purchaser by quit claim deed is not a bona fide purchaser for value. Jennings v. Dockham, 99 Mich. 253, 58 N. W. 66; Southern Ry. Co. v. Carroll, 86 S. C. 56, 67 S. E. 4; Swango v. Kentucky Coal & Timber Dev. Co., 200 Ky. 522, 255 S. W.

114, 27 R. C. L. 499; Thompson on Real Property, Vol. V., page 38, Section 4045. All these instruments being of record and regular and having nothing in their face to put Bill on notice, they were ineffectual for that purpose.

The deed from Carey to McNeill is not a quit claim deed and contained nothing on its face to excite Bill's suspicion. The granting clause is as follows: "has granted, bargained, sold, and transferred, and by these presents does grant, bargain, sell and transfer unto the said party of the second part and his heirs and assigns forever, all that certain parcel of land lying and being in the County of Palm Beach and State of Florida, more particularly described as follows:".

Following the (omitted) description, the said deed shows on its face that it is. the subject to the two mortgages of record, unpaid tax assessments, certain other restrictions and a lease. It then contains the following qualifying paragraph:

"Together with all the tenements, hereditaments and appurtenances, with every privilege, right, title, interest, and estate, dower and right of dower, reversion, remainder and easement thereto belonging or in any wise appertaining:"

The habendum clause in said deed is as follows: "To have and to hold same in fee simple forever."

After the habendum clause, said deed contains this limiting provision:

"It is mutually understood and agreed that the Grantee herein expressly neither assumes nor agrees to pay the above described mortgages, taxes, and assessments; it being the intention of both parties to this conveyance that the Grantee herein is simply purchasing the equity of the Grantee herein in the above described real and personal property."

Examination of these provisions of said deed discloses that the granting clause is substantially that required for a warranty deed under the law of this State. Taken in connection with the evidence, it can be construed as nothing short of a bargain and sale of the fee simple title subject to the two mortgages and the tax liens heretofore spoken of.

It is true that by the paragraph last quoted, Bill's purchase was limited to the "equity" of the grantor but this limitation has reference solely to the recorded mortgages and tax liens and has no reference whatever to the Pierson mortgage nor was it intended in any respect to reduce the absolute estate conveyed by the granting and habendum clauses. The evidence on this point is uncontradicted and conclusively supports this conclusion. The evidence further shows that none of the witnesses knew of the Pierson mortgage except perhaps Mrs. Carey and her counsel and that such knowledge as they had of it was studiously kept from Bill.

In the lingo of the law, the word "equity" or "equity of redemption" has a well defined meaning. It has reference to the right of the mortgagor to redeem after forfeiture for nonpayment of the mortgage but before sale by the sheriff. In this State, the mortgagor retains the property subject to the lien, so technically the concept "equity" or "equity of redemption" is unknown to our law. In its common acceptation, it has reference to the value of the property in excess of encumbrances that amount to a lien and that was the sense in which it was employed in the deed brought in question. The evidence shows this conclusively and when the intention of the parties is thus shown a bargain and sale of the fee simply cannot be escaped. There is a rule of legal syntax which, as here, re-

quires evidence to reveal and the scrivener did not take it into account in the preparation of the deed.

It is further contended that the proof of claim filed by Suzanne Pierson in the Probate Court of Palm Beach County, October 4, 1933, in the matter of the estate of Frederick Foster Carey was constructive notice to Bill of her unrecorded mortgage.

It is true that said proof of claim against the Carey estate refers to the unrecorded Pierson mortgage yet despite such showing, said mortgage was withheld from record until January 13, 1934, after the recordation of Bill's deed. Such proceedings in the probate court do not constitute constructive notice to subsequent purchasers for value. Matters which constitute notice must be included in the record of deeds, mortgages, or in the face of other instruments recorded in the chain of title. Such is the requirement of our recording statute. 27 R. C. I. 717, 66 C. J., Section 955; Thompson on Real Property, Vol. V, page 294; Dewyer v. Dover, et al., 222 Ala. 543, 133 So. 581; Whittmeir v. Leonard, 219 Ala. 314; 122 So. 330; Acer v. Wesscott, 46 N. Y. 384.

It is further contended that the fact that Union Trust Company secured a policy of title insurance was constructive notice to Bill of Pierson's unrecorded mortgage.

A copy of the title insurance policy secured by Union Trust Company was introduced in evidence and much was said in briefs of counsel and at the bar of this Court to the effect that this suit was in reality one to defeat payment on said policy. In the brief filed February 13, 1939, this question and that of whether or not the deed from Carey to McNeill was a quit claim, are the only questions relied on.

Under no stretch of the imagination could such a policy be construed as actual or constructive notice to Bill of the

Pierson mortgage. It is predicated on a search of the record and states in terms that it does not insure against defects or infirmities not there shown to exist. Title insurance is an element of approved good business practice; the policy is not required to be recorded in the chain of title and has nothing on its face to warn any one. It takes the place of an attorney's opinion as to the title and is predicated on the same kind of a search. The very purpose of recordation is to apprise the world of title status. The purchasing world relies on it and he who does not observe it should not be permitted to profit at the expense of those he deceives thereby.

A title policy is not extracted from pure guess or speculation. It contemplates a search of the chain of title, an opinion by an expert of what the search reveals and a guaranty that the search was accurate and expresses the quality of title shown by the record. It does not presume to insure against infirmities not shown of record. Title guaranty companies no less than others may rely on the recording statutes. In this case, Bill is shown to have exercised due diligence in search of infirmities in his title. He found all that the record disclosed or that he had notice of and his search is shown to have covered all the recording statute requires. There was nothing to lead him to suspect that there might be others outstanding.

All presumptions are in favor of the bona fides of Bill's purchase and that he acquired title to the lots in good faith without notice of the Pierson mortgage. Unless Mrs. Pierson can show that Bill acquired his title with actual or constructive notice of her mortgage, he will be protected against her claim by the recording statute. The Chancellor found that he was so protected and we find no evidence to the contrary. Feinberg v. Stearns, 56 Fla. 279, 47 So. 797; West Coast Lumber Co. v. Griffin, 56 Fla.

878, 48 So. 36; Hopkins v. O'Brien, 57 Fla. 444, 49 So. 936; Rambo v. Dickenson, 92 Fla. 758, 110 So. 352; Lesnoff v. Becker, 101 Fla. 716, 135 So. 146.

It is therefore our conclusion that the fact that Bill acquired his title through Union Trust Company, a foreign corporation as Trustee, is immaterial, that the resulting trust by which Union Trust Company acquired the property for Bill can be proven by parole and enforced in equity notwithstanding the fact that it was not shown to have been evidenced by an instrument in writing and that Bill and his trustees were innocent purchasers for value and without notice of the Pierson mortgage.

It follows that our former opinion and judgment must be and is hereby receded from and the judgment below affirmed.

Affirmed.

BROWN, CHAPMAN and THOMAS, J. J., concur.

WHITFIELD, J., dissents.

BUFORD, J., dissents, adhering to original opinion.

WHITFIELD, J. (dissenting).—If I could interpret the provision of the deed, viz.: "it being the intention of both parties to this conveyance that the grantee herein is simply purchasing the equity of the grantor herein in the above described real and personal property," as being a conveyance of the property and not merely "the equity of the grantor" in the property, I would concur in the opinion of the Chief Justice.