MANUFACTURERS TRUST COMPANY, Landlord, Appellant, *v.* MORRIS PERMUT et al., Tenants and Undertenants, Respondents.

(Eight other proceedings brought by same landlord against tenants and undertenants.)

Supreme Court, Appellate Term, First Department, February 5, 1948.

*Gerard I. Walters* and *Harry R. Dulman* for appellant.

*Nathan Permut* and *Morris Permut* for Morris Permut and others, respondents.

*Martin B. Stecher* and *Jordan R. Bassett* for Stanley L. Roggenburg and others, respondents.

*Maxwell Wyckoff* and *George L. Livingston* for Isidor E. Civic, respondent.

*Arnold R. Lewis* for George J. Balbach and others, respondents.

*Ira H. Newman* for Kurt Werner, respondent.

*Morris Weissman* for Carl Zekaria, respondent.

*John Kirkland Clark* and *James V. Sullivan* for O. M. Knoof, Inc., respondent.

HOFSTADTER, J. The proceedings were instituted under subdivision (d) of section 8 of the emergency business statute to recover possession of several floors of the building, No. 29 Broadway, for the landlord's immediate and personal use. The petition alleges that the landlord has an equity of not less than 25% of the purchase price of the property and is the owner of the whole investment in the business to be carried on in the premises.

The nine proceedings were all tried concurrently pursuant to stipulations, and additional testimony was adduced in the proceeding against Pilot Marine Corp.

The landlord acquired title to the property as the result of a sale in foreclosure. The landlord, the former mortgagee, was plaintiff in the foreclosure action and the purchaser at the sale. The referee conveyed title to the assignee of the plaintiff's bid, 29 Broadway, Inc., a corporation formed by the landlord for the sole purpose of executing a bond and mortgage on the property and conveying title to the landlord. Thus, 29 Broadway, Inc., acted merely as a conduit in the transaction. The bid at the foreclosure sale was $1,392,750. 29 Broadway, Inc., executed a bond and mortgage to Penn Mutual Life Insurance Company in the principal sum of $1,200,000, and the landlord holds a $300,000 junior participation in this bond and mortgage.

The landlord contends that the amount found due in the foreclosure judgment, $7,778,185.72, is its investment in the property and, therefore, the purchase price under the statute. The legal rights of the landlord, as a mortgagee, were, however, not those of a fee owner. The landlord acquired the fee by virtue of the referee's deed, not by virtue of its mortgage. The indebtedness cannot be regarded as the purchase price paid when the landlord became the fee owner.

The tenants, in the court below, insisted that the purchase price was the bid at the foreclosure sale, $1,392,750, and successfully objected to the landlord's effort to establish the value of the property. If the landlord is confined to the amount of the bid, as the purchase price, the landlord still has an equity over the $900,000 senior interest in the mortgage held by the Penn Mutual Life Insurance Company. The statute requires the landlord seeking possession to have a substantial equity in the property. Whether that equity consists, as here, in a participating interest in a mortgage, or in direct payment, is unimportant so long as it represents an actual investment of the landlord in the property. That is undoubtedly the case here.

If the landlord's $300,000 participation is subtracted from the $1,200,000 mortgage, then the difference between the $900,000 mortgage held by the Penn Mutual Life Insurance Company and the foreclosure sale bid of $1,392,750, is in excess of the necessary 25%.

The fact that 29 Broadway, Inc., was used as a vehicle does not affect the situation. (*Goldberg* v. *Friedman*, 187 Misc. 445, motion for leave to appeal denied 270 App. Div. 939.)

Pilot Marine Corp. is the tenant of space 1214 sought by the landlord in this proceeding. O. M. Knoof, Inc., was the tenant of space 1811 in the building. In February, 1946, Pilot and Knoof agreed between themselves that Knoof should move to 1214 and Pilot to 1811, each, however, continuing liable on its lease and each paying rent to the landlord under its lease. It may be assumed that the exchange of space was consented to by the landlord. The legal situation with respect to the 1214 space sought by the landlord, then, is that Pilot is the tenant and Knoof the undertenant. As tenant, Pilot is in the same plight as the other tenants whose space the landlord is entitled to take, and its undertenant, Knoof, has no greater rights than Pilot.

Knoof, in January, 1947, entered into a lease of 1811 from May 1, 1947, to April 30, 1950. It contends that the following clause in its lease entitles it to remain in possession of 1214 until the landlord is able to give it possession of 1811: " If the building in which the demised premises are located is not in course of construction, and Landlord is unable to give possession of the demised premises on the date of the commencement of the term hereof by reason of the holding over of any tenant or tenants or for any other reason; or if repairs, improvements or decorations of the demised premises or of the building in which said premises are located, are not completed, no abatement or diminution of the rent to be paid hereunder shall be allowed to Tenant under such circumstances. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease, except as to the covenant to pay rent. In either case rent shall commence on the date specified in this lease."

It is manifest that this clause was intended to apply to a situation in which the landlord itself, for its own purposes, in

the particular circumstances expressly denoted, put the tenant in possession of other space as an incident to the lease. Here, Knoof went into possession of 1214 in 1946 by virtue of its agreement with Pilot. This transaction between Knoof and Pilot took place before Knoof's new lease was made. Even though the landlord consented to the sublease, the consent had no relation whatever to the new lease entered into almost a year later. Knoof's possession of 1214 stems from its agreement with Pilot. Pilot, not the landlord, put Knoof in possession. The clause relied on by Knoof cannot fairly be stretched and its intendment distorted to cover the situation in which Knoof finds itself not because of what the landlord did but because of what Knoof itself did in making its agreement with Pilot.

Accordingly, the landlord is entitled to recover the 1214 space now occupied by Knoof.

The final orders should be reversed, with $30 costs as of one appeal, and final orders directed for the landlord, with costs.

EDER, J. (dissenting). The court below decided against the landlord-appellant holding that " The landlord does not have an equity in the property of not less than 25% of the purchase price." The landlord is required by subdivision (d) of section 8 of chapter 314 of the Laws of 1945, as amended and continued by chapter 273 of the Laws of 1946, to have such an equity.

The landlord contends that upon the factual situation here disclosed, a fair construction of this statute qualifies it as having such prescribed equity.

Landlord held a mortgage upon the premises in question and sued to foreclose the same; a judgment of foreclosure and sale was entered showing the sum due to landlord as plaintiff in that action was $7,778,185.72; landlord as plaintiff in that action bid in the property at the foreclosure sale for $1,392,750; it assigned its bid to 29 Broadway, Inc. (its conduit). The bid was accepted and the referee conveyed the property to said 29 Broadway, Inc., on January 22, 1946; the referee's deed recites the bid of $1,392,750, as the consideration for the deed. Thereafter and on said day, 29 Broadway, Inc., executed a bond and mortgage to the Penn Mutual Life Insurance Company, for $1,200,000, and on the same day conveyed the premises to the landlord and it holds a junior participation in said bond and mortgage for $300,000.

In urging that it qualified under said subdivision (d) of section 8, landlord contends that the sum of $7,778,185.72, found

due in the foreclosure judgment, is its investment in the property, and, therefore, the purchase price under the statute.

The tenants contend that the bid at the foreclosure sale of $1,392,750, and which is expressed in the referee's deed, as the consideration, is the purchase price; that the amount less the afore-mentioned mortgage of $1,200,000 was the equity of the landlord in the property, and that the equity is therefore established at $192,750, which said sum is only about 13% of the purchase price of $1,392,750, and thus, the landlord failed to prove that it possessed the requisite equity prescribed by the act.

The majority now holds, and I am in accord, that the indebtedness under the mortgage foreclosure cannot be regarded as the purchase price paid when the landlord became the fee owner as it acquired the fee by virtue of the referee's deed and not by virtue of its said mortgage.

The majority view is that even if the landlord is confined to the amount of the bid, as the purchase price, that the landlord still has an equity sufficient to qualify it under the statute; that is, if the landlord's participation of $300,000 is subtracted from the $1,200,000 mortgage, then the difference between the $900,000 senior interest in the mortgage held by the Penn Mutual Life Insurance Company and the foreclosure bid of $1,392,750 is in excess of the necessary 25%. That is, adding the $300,000 junior participation to the said sum of $192,750 would be $492,750, so that the landlord's equity in the property against the price of $1,392,750 would be more than 35% of such price and in excess of the 25% required under the statute.

The majority view states that whether the equity consists, as here, in a participating interest in a mortgage, or in a direct payment, is unimportant so long as it represents an actual investment of the landlord in the property.

I am unable to concur. The statute requires the landlord to have an equity in the property of not less than 25% of the " purchase price ". " Purchase price " means money paid for the land, by means of which payment title is acquired (*Kimble* v. *Esworthy*, 6 Ill. App. 517); a mortgage is a security, and while it is a form of investment, I cannot agree that it comes within the term " purchase price "; a mortgage creates a lien and is an incumbrance; equity is the interest above incumbrances that amount to a lien (*Pierson* v. *Bill*, 138 Fla. 104, 115).

It is my view that by subdivision (d) of section 8, in this connection, the legislative intent, in the use of the terms

" equity " and " purchase price ", was that the purchase price was the money paid for the land, that the term was used in the commonly understood and accepted sense, and does not include and was not intended to include a participating interest in a mortgage, or in a mortgage as an independent investment, and that by the term " equity " was meant and intended the interest of the landlord above incumbrances that amount to a lien.

Therefore, the equity of the landlord herein must be determined by that standard, and, thus considered, we find the purchase price is the sum of $1,392,750; the mortgage incumbrance is the sum of $1,200,000, and the equity — the interest of the landlord above the incumbrance — to be the sum of $192,750, which is less than 25% of the purchase price.

Again, the $300,000 junior participation interest of the landlord in the mortgage of $1,200,000, which is a lien on the premises, does not reduce the amount of the mortgage lien. There is no claim or proof that there was an extinguishment of the mortgage lien to the extent of $300,000; on the contrary, the landlord asserts that it still holds a participation in the $1,200,000 mortgage lien to the extent of $300,000, and states that the present mortgage lien on the premises is $1,200,000 and not $900,000. It is thus again established that the landlord's equity is only about 13% of the purchase price and thus does not satisfy the statutory requirement.

As to subtenant Knoof's contention that it is entitled to remain in possession of space 1214 until the landlord is able to give it possession of space 1811, I am in accord with the majority view that it is not.

I think the final orders appealed from should be affirmed — that the ruling of the court below was correct in holding that the landlord-appellant has not qualified under the statute.

HAMMER, J., concurs with HOFSTADTER, J.; EDER, J., dissents in opinion.

Final orders reversed, etc.