[No. 32331. Department Two. June 25, 1953.]

DAISY CROWDER, *Appellant,* v. THE DEPARTMENT OF SOCIAL
SECURITY, *Respondent.*[1]

*Johnson, Dafoe & Jonson (Carl A. Jonson,* of counsel),
for appellant.

*The Attorney General* and *Moksha W. Smith, Assistant,*
for respondent.

HAMLEY, J.—The question presented on this appeal is
whether the action of the King county welfare department

[1] Reported in 259 P. (2d) 387.

in terminating, as of January 1, 1952, the old age assistance grant of Daisy Crowder was arbitrary, capricious, or contrary to law.

Prior to July 16, 1947, Daisy Crowder and William E. Crowder, her husband, now deceased, were receiving old age assistance grants from the state of Washington. On that date, they mortgaged their residence property to Seattle First National Bank, Seattle, Washington, for the sum of forty-five hundred dollars. They gave the proceeds of this mortgage loan to a son, E. L. Carter, for his separate use. The mortgage was signed by Mr. and Mrs. Crowder and their son, as were also the subsequent refinancing mortgages to which reference will be made.

On August 1, 1948, the old age assistance grants of Mr. and Mrs. Crowder were terminated by the King county welfare department. This was done on the basis of a departmental regulation which provided that any transfer of a resource by a recipient for less than the quick sale value was presumptively a transfer to qualify for assistance. The regulation further provided that a recipient who had made such a transfer would be considered to have available resources to meet need in a sum equal to the quick sale value of the transferred property.

This action was upheld by the director of the state department of social security. The matter was appealed to the superior court of the state of Washington for King county. The Crowders there took the position that they had not transferred a resource. The superior court sustained this view, and on October 21, 1948, ordered that the recipients be reinstated on the old age assistance rolls. The department abided by this decision, no appeal being taken to this court.

In discussing the subsequent action of the county welfare department (here under review) again terminating the Crowders' old age assistance grants, it is first necessary to refer to a significant change in the law which took place after their grants had been restored, as described above.

Prior to the enactment of initiative measure No. 178, which became effective December 7, 1950 (Laws of 1951, chapter 1, p. 3), there was no provision in the law for the

setting of a ceiling value on an applicant's home property in classifying such property as an exempt resource for the purpose of determining need. See Laws of 1947, chapter 288, § 3 (b) (1) (a), p. 1356; Laws of 1949, chapter 6, § 3 (h), p. 24.

Under initiative measure No. 178, however, the department of social security was required to fix, by rule and regulation, a ceiling value on home property. It was there further provided that, if an applicant or recipient possesses home property of a value in excess of such ceiling value, such person shall be ineligible for public assistance. RCW 74.08-.020 (Laws of 1951, chapter 1, § 4).

Pursuant to this statutory authority, the department of social security filed with the secretary of state of the state of Washington rules and regulations which established the figure of eight thousand dollars as the ceiling value on homes owned by all old age assistance recipients.

On April 2, 1951, the King county welfare department appraised the Crowder's home property and fixed its fair market value at ninety-five hundred dollars. On December 21, 1951, the same agency notified the Crowders that, since this appraised value exceeded the ceiling value fixed by rule and regulation, their old age assistance grants would be terminated, effective January 1, 1952.

The Crowders requested a fair hearing, as provided by RCW 74.08.070, and such a hearing was accorded them. At this hearing, the Crowders did not challenge the appraisal figure of ninety-five hundred dollars. They contended, however, that, by failing to deduct therefrom the existing mortgage of record in determining whether or not the ceiling value had been exceeded, the department had acted arbitrarily, capriciously, and contrary to law. By that time, the original mortgage referred to above had twice been refinanced, and the then current balance due thereon was $5,771.49. Had this balance been deducted from the appraised market value, the net value would have been $3,728.51, or $4,271.49 less than the ceiling value.

The director of the department of social security, in a decision rendered on June 5, 1952, upheld the action of the county welfare department. This was done on the ground

that, under the circumstances, the mortgage did not have the effect of reducing the Crowders' net equity in the home property, and that the balance due thereon should therefore not be deducted from the appraised market value. In this connection, it was pointed out in the director's decision that the son, E. L. Carter, had negotiated the mortgages, received the proceeds therefor, obligated himself to pay them, and was doing so. As in the case of the original mortgage, the encumbrance was against the Crowders' home property, and they were promissors on the mortgage loan, along with Carter.

Mr. Crowder died on June 12, 1952, and the decision of the director as to him was not appealed. Daisy Crowder appealed to the superior court of the state of Washington for King county. That court, in a judgment filed on August 25, 1952, sustained the department of social security and dismissed the action. Mrs. Crowder has appealed to this court.

It may be said at this point that the amount in controversy is the total old age assistance grant to which appellant would have otherwise been entitled from January 1, 1952, to April 1, 1953. On the latter date, chapter 174, Laws of 1953, became effective, whereby the authority of the department to fix ceiling values on home property was terminated, and a return was made to the former plan (prior to initiative measure No. 178), under which home property is an exempt resource, regardless of its value. See Laws of 1953, chapter 174, §§ 17(11)(a) and 52, pp. 343, 374.

The statute in effect during the period in controversy (RCW 74.08.020) provided that, if any applicant for, or recipient of, public assistance possesses home property or personal property and belongings, or both, of a "value" in excess of such ceiling values, such person shall be ineligible for public assistance. This section further provided that:

"Value shall be the current fair market value, less liens and encumbrances of record."

The mortgage in question is of record. Respondent contends, however, that, reading the act as a whole, a mortgage

should not be regarded as an encumbrance if, under the circumstances of a particular case, it does not have the effect of reducing the applicant's or recipient's net equity in the home property. Applying that principle to the instant case, respondent argues that, since the son received all the proceeds of the mortgage, is obligated to repay it, and is doing so, the mortgage in question does not have the effect of reducing appellant's net equity in the property.

Were we to agree with the principle contended for by respondent, it would nevertheless be necessary to reject its application to this case.

■ Carter, along with appellant, is obligated to pay off the mortgage, and it may be that he is also obligated to save appellant harmless from any suit on the note or mortgage. But appellant's equity in the home property is in no way affected by the fact that she may have a right of action over against Carter or his estate in the event she loses the property on a foreclosure. What we are here concerned with is appellant's interest *in the property*, not in her accounts receivable, present or prospective. Her equity in the home property is simply the value of the property in excess of the encumbrance against it. *Pierson v. Bill,* 138 Fla. 104, 189 So. 679; *Halvorson v. Mullin,* 179 Iowa 293, 156 N. W. 289; *Des Moines Joint Stock Land Bank v. Allen,* 220 Iowa 448, 261 N. W. 912.

■ Moreover, we find nothing in the act, read as a whole or otherwise, which warranted the department in giving any consideration to whether the encumbrance effectuated a reduction in the recipient's "net equity." The above-quoted statute provides in specific terms that value shall be the current fair market value, "less liens and encumbrances of record." This language is not ambiguous. It says nothing about "net equity." There can be no doubt that this mortgage was both a "lien" and an "encumbrance." See *Swanson v. Graham,* 27 Wn. (2d) 590, 597, 179 P. (2d) 288; *Hebb v. Severson,* 32 Wn. (2d) 159, 167, 201 P. (2d) 156. It was concededly of record. While both appellant and respondent refer to certain administrative rules and regulations, we

do not believe they can either add to or detract from statutory language which is so plain.

It should be noted that there is in this case no contention or showing of fraud in connection with the mortgaging of the Crowder property. The mortgage, in fact, was placed several years before enactment of the statute authorizing the fixing of a ceiling value on home property. The mortgage, therefore, could not have been placed for the purpose of bringing the value of the property under such ceiling.

It is our conclusion that the county welfare department acted contrary to law in terminating appellant's old age assistance grant. The judgment is therefore reversed and the cause is remanded, with directions to proceed in accordance with the views herein expressed. Appellant shall be allowed reasonable attorney's fees and costs, as provided in RCW 74.08.080, including attorney's fees on appeal in the sum of three hundred fifty dollars.

GRADY, C. J., DONWORTH, and FINLEY, JJ., concur.

SCHWELLENBACH, J. (concurring)—In the act, the department was given authority, by rule and regulation, to fix ceiling values on home property. The initiative then defined "value" as follows:

"Value shall be the current fair market value, less liens and encumbrances of record."

The department then made Rule 411.212-R:

"In evaluating real property claimed by an A-R as a home, it is necessary for the CWD (County Welfare Department) to make three separate determinations, as follows:

". . .

"3. Is the applicant's *equity* in the property less than the ceiling value?

"In evaluating this the CWD will need to know:

"(a) The legal description of the property.

"(b) The names of all persons having any legal title to the property and the names of all persons holding recorded encumbrances on the property (including delinquent taxes); and the *terms and conditions of all such interests and encumbrances,* including balance due.

"(c) Fair market value of the property.

"(d) Applicant's *net equity* in the property." (Italics mine.)

The department of social security, therefore, by its rules and regulations, attempted to modify the statute relating to eligibility of a recipient to continue to receive old age assistance, and set up a new standard of eligibility, contrary to the clear words of the statute.