[No. 70762-6. En Banc.]
Argued October 25, 2001. Decided December 27, 2001.

COLLEEN STOKES, *Petitioner*, v. SCOTT L. POLLEY, ET AL.,
*Respondents*.

CHAMBERS and IRELAND, JJ., concur by separate opinion.

*David M. Abercrombie*, for petitioner.

*Lewis W. Card* (of *Davis Arneil Law Firm*) and *J. Patrick Aylward* and *Brian C. Huber* (of *Jeffers, Danielson, Sonn & Aylward, P.S.*), for respondents.

SANDERS, J. — Colleen Stokes seeks review of a Court of Appeals opinion affirming an order granting summary judgment in favor of respondents Scott and Kathy Polley, Ken and Lori Rector, and the Bank of New York. This is a quiet title and partition case, the essence of which involves interpreting a 1980 dissolution decree. The main issue is whether Stokes' award of "one-half the equity" in certain real estate refers to a monetary award, enforcement of which is barred by the statute of limitations, or an interest in real property which subsists. We hold it refers to a time-barred money award and affirm the appellate court.

## Facts and Procedural History

In 1976 Scott Polley acquired by real estate contract approximately 20 acres of property in Chelan County. He married Stokes on October 3, 1977. They separated in May 1979. On March 26, 1980, Stokes obtained a dissolution decree presented by her attorney in a default proceeding in Chelan County Superior Court. The decree provides in relevant part:

4. The community property of the parties is hereby divided as follows:

a. The petitioner is awarded the household goods and furniture in her possession and *one-half the equity* in the 20 acres of property located in Union Valley, Chelan County, Washington.

b. The respondent is hereby awarded the household goods and furniture in his possession, the automobile and tractor now

in his possession and *one-half the equity* in the 20 acres in Union Valley, Chelan County, Washington.

5. The respondent is hereby required to pay all community indebtedness incurred prior to the separation of the parties. Each of the parties is required to pay their separate indebtedness.

Clerk's Papers at 102-03 (emphasis added). The decree neither purports to divide the separate property of either spouse nor includes the legal description of the real property.

In 1986, Polley paid off the purchase contract and received a statutory warranty fulfillment deed. On January 7, 1993, Polley sold the real property by real estate contract to Ken and Lori Rector who are the present owners.

On December 31, 1998, Stokes filed a complaint in Chelan County Superior Court to quiet title and partition the real property. She claimed the 1980 dissolution decree awarded her a one-half *ownership interest* in the real property, not merely a monetary award. The trial court rendered summary judgment that Stokes acquired no interest in the real property as such because the decree awarded her only a one-half interest in the *equity* of the property; equity meant one-half of the value of the property in excess of debt as of 1980; and such an award constituted at most an equitable lien. Accordingly, the trial court dismissed Stokes' claims with prejudice.

Stokes appealed the summary judgment order, which the Court of Appeals affirmed in an unpublished opinion. *Stokes v. Polley*, No. 18969-4-III, 2000 Wash. App. LEXIS 2120, 2000 WL 1663646 (Wash. Ct. App. Nov. 2, 2000). The court stated:

A 1980 divorce decree awarding Ms. Stokes "one-half the equity" in certain real property purchased by Mr. Polley before the parties' brief marriage, meant a money judgment barred by the statute of limitations, and not a title interest in the real property.

*Id.*, 2000 Wash. App. LEXIS 2120, at *1, 2000 WL 1663646, at *1. The Court of Appeals also denied Stokes' motion to

publish the opinion. Stokes then petitioned this Court for review, which we granted.

## Analysis

The issue on review is whether the Court of Appeals erred by interpreting the award in the 1980 divorce decree of "one-half the equity" as a money judgment barred by the statute of limitations for enforcement.[1]

A. Interpretation of "One-Half the Equity" in Real Property

We are reviewing a summary judgment order. Summary judgment "shall be rendered . . . [if] no genuine issue as to any material fact [exists] and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). Summary judgment orders are reviewed de novo. *W. Telepage, Inc. v. City of Tacoma*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). Interpreting a dissolution decree involves a question of law reviewed de novo. *In re Marriage of Thompson*, 97 Wn. App. 873, 877, 988 P.2d 499 (1999). Because this case involves interpreting a dissolution decree on review of a summary judgment order, we apply de novo review.

Washington courts apply rules of construction applicable to statutes and contracts to determine the intent of the dissolution court. *See, e.g., Thompson*, 97 Wn. App. at 878 (citing *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981)). This is true regardless whether the defendant appears in the dissolution proceeding. *Hill v. Hill*, 3 Wn. App. 783, 786, 477 P.2d 931 (1970). In such cases, the court is presumed to determine all parties' property rights, leaving none undisposed. *Id.* at 786-87 (citing 24 AM. JUR. 2D *Divorce and Separation* § 925 (1966)); *see also Webster v. Webster*, 2 Wash. 417, 420, 26 P. 864 (1891).

Decrees should be construed as a whole, giving meaning and effect to each word. *Wagner v. Wagner*, 95

---

[1] In view of this published opinion, Stokes' claim that the Court of Appeals erred by not publishing its opinion is moot.

Wn.2d 94, 101, 621 P.2d 1279 (1980). The words used have the legal effect as understood by the law at the time the decree was entered. *Reedy v. Reedy*, 12 Wn. App. 844, 848, 532 P.2d 626 (1975). However, "[w]ords should be given their ordinary meaning." *Corbray v. Stevenson*, 98 Wn.2d 410, 415, 656 P.2d 473 (1982) (contract interpretation case). Finally, where language is used in one instance but not another, there is a difference in intent. *Seeber v. Pub. Disclosure Comm'n*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981) (statutory interpretation case).

All property, separate and community, is presumed to be before the court for division. Former RCW 26.09.080 (1973); *Friedlander v. Friedlander*, 80 Wn.2d 293, 305, 494 P.2d 208 (1972). While the court considers the nature and extent of the community and separate property, *see* former RCW 26.09.080 (1973), the character of the property need not be specifically designated or labeled. *Peterson v. Peterson*, 3 Wn. App. 374, 377, 475 P.2d 576 (1970). Moreover, the court need not characterize each piece of property. *In re Marriage of Melville*, 11 Wn. App. 879, 880-81, 526 P.2d 1228 (1974). While the character of property is relevant to determine a just and equitable distribution, it is not controlling. *In re Marriage of Hadley*, 88 Wn.2d 649, 656, 565 P.2d 790 (1977). That said, Washington courts refrain from awarding separate property of one spouse to the other if a just and equitable division is possible without doing so. *See* WASH. STATE BAR ASS'N, WASHINGTON FAMILY LAW DESKBOOK § 39.3(2)(a), at 39-14 (1989).

Parties to a dissolution action have the right to have their property interests definitively and finally determined in the decree. *Shaffer v. Shaffer*, 43 Wn.2d 629, 631, 262 P.2d 763 (1953). Thus courts have a duty to not award property to parties as tenants in common. *Bernier v. Bernier*, 44 Wn.2d 447, 449-50, 267 P.2d 1066 (1954). To avoid this result and future forced sale and partition actions, courts should award the property itself to one spouse and an offsetting monetary award to the other

spouse. *See* WASHINGTON FAMILY LAW DESKBOOK, *supra*, § 39.4(1)(a), at 39-20.

■■ ■■ The record on its face demonstrates the real property at issue was in fact Polley's separate property. Polley was the named purchaser on the real estate contract. The contract was executed before Polley and Stokes were married. When acquiring property by real estate contract, "[t]he ownership of real property becomes fixed when the obligation becomes binding, that is, at the time of execution of the contract of purchase." *Beam v. Beam*, 18 Wn. App. 444, 453, 569 P.2d 719 (1977); *see also In re Marriage of Harshman*, 18 Wn. App. 116, 124-25, 567 P.2d 667 (1977), *overruled on other grounds by In re Marriage of Elam*, 97 Wn.2d 811, 815, 650 P.2d 213 (1982).[2]

■■ The dissolution decree unambiguously purports to divide all the *community* property of Polley and Stokes. The decree divides the "equity" in Polley's real property. Accordingly, whether correctly or not, it seems the trial court characterized the "equity" of the real property as community property and divided the equity in half—one half to each party.

At the time the decree was entered in 1980 the ordinary meaning of "equity" in property was the fair market value of the property over its debts. *See, e.g.*, BLACK'S LAW DICTIONARY 484 (5th ed. 1979) (Equity means "[t]he amount or value of a property above the total liens or charges [or] [t]he difference of the fair market value and debt in property."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 769 (1971) (Equity means "the money value of a property or of an interest in a property in excess of claims or liens (as mortgaged indebtedness) against it."); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 769 (1981) (same); WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY UNABRIDGED 618 (2d ed. 1979)

---

[2] This has not always been the rule in Washington for installment purchase contracts. *See, e.g.*, *In re Kuhn's Estate*, 132 Wash. 678, 233 P. 293 (finding character of property determined at time of final payment, when title passes), *modified on reh'g*, 135 Wash. 693, 236 P. 568 (1925). However the rule in Washington was well settled by 1980.

(Equity means "the value of property beyond the total amount owed on it."). This Court has similarly stated "equity in the home property is simply the value of the property in excess of the encumbrance against it." *Crowder v. Dep't of Soc. Sec.*, 42 Wn.2d 782, 786, 259 P.2d 387 (1953).

Accordingly, this reference to equity does not purport to divide the real property itself or any ownership interest thereof.

Although the real property was before the court, the decree is silent on the characterization of this property and to whom it should be distributed. This view is underscored by the fact the trial court did not include the legal description of the property in the decree.

As discussed above, on its face the contract to purchase this real property indicates it was Polley's separate property absent facts to the contrary. When the disposition of a spouse's separate property is not made in a decree, it remains the separate property of that spouse after the decree. *James v. James*, 51 Wash. 60, 62, 97 P. 1113, 98 P. 1115 (1908) (citing *Ambrose v. Moore*, 46 Wash. 463, 90 P. 588 (1907)); *see also In re Estate of Mell*, 105 Wn.2d 518, 521-22, 716 P.2d 836 (1986) (evaluating other aspect of *James* in will construction context). Thus, we conclude the real property remained Polley's separate property on this record.

Stokes asserts *Hill* supports her view that an award of "equity" includes an award of title or ownership and not merely a monetary award. The issue before the Court of Appeals in *Hill* was whether the award of "equity in the home" included the right of possession. *Hill*, 3 Wn. App. at 785-87. The court began its reasoning by restating the rule "[t]he term 'equity in the home' is commonly understood to mean the value of the property in excess of the encumbrances against it." *Id.* at 787 (citing *Crowder*, 42 Wn.2d at 786). However, it then departed from that rule—without citation—and assumed "[t]he award of the equity is the award of title or ownership of the home, subject to outstand-

ing encumbrances such as a mortgage." *Id.* The court added:

> The concept of title or ownership is a concept describing a bundle of rights in rem with respect to property, of indeterminate duration, residuary in character and includes the right to possess, use, consume, destroy, and alienate the subject matter of that ownership. When therefore the court awarded the plaintiff "the equity in the home . . . together with the household furniture contained therein" it awarded to the plaintiff the bundle of rights constituting the equity, one of which was the right of possession.

*Id.* (citations omitted). If *Hill* stands for the proposition that "equity" includes title, we disapprove *Hill*. However, no published opinion ever relied upon *Hill* for that proposition.

Stokes also argues *Harshman* holds the purchaser of real property under a real estate contract acquires an "equitable interest," and therefore asserts Polley had only a property interest of "equity" when the decree was entered, an interest the trial court characterized as community property. The *Harshman* court is clear, however, that "[a] contract vendee gains an equitable ownership in the property at the time of its acquisition." *Harshman*, 18 Wn. App. at 124. Thus the property interest—even if "equitable"—is an ownership interest, not merely an interest in the "equity." Stokes misreads *Harshman* and fails to distinguish other authority adverse to her position. *See, e.g., In re Binge's Estate*, 5 Wn.2d 446, 484, 105 P.2d 689 (1940) (implicitly overruling *In re Kuhn's Estate*, 132 Wash. 678, 233 P. 293, *modified on reh'g*, 135 Wash. 693, 236 P. 568 (1925)); *In re Dougherty's Estate*, 27 Wn.2d 11, 176 P.2d 335 (1947); *Fritch v. Fritch*, 53 Wn.2d 496, 335 P.2d 43 (1959); *Beam*, 18 Wn. App. at 453; *see also* Harry M. Cross, *The Community Property Law in Washington*, 49 WASH. L. REV. 729, 762-63 (1974).

Stokes also asserts Polley is precluded from collaterally attacking the characterization of property in the decree. However preclusion rules do not apply here. The decree did not characterize the real property but only the equity therein. Furthermore we are simply asked to interpret the

decree, not to modify its terms. *See* RCW 26.09.170(1) (stating no modification of provisions unless conditions justify reopening judgment); *Thompson*, 97 Wn. App. at 878 (finding interpretation does not amount to modification and is permissible).

The 1980 dissolution decree awarded Stokes exactly what it stated: one-half the *equity* in the real estate. We hold the award meant a monetary award, not an award of title or ownership.

B. Statute of Limitation

 ██ Actions on a judgment or decree must be brought within 10 years. RCW 4.16.020(2). The time period begins to run the date the decree is entered. RCW 6.17.020(1). The limitation period thus presumptively ran out in 1990, approximately nine years before enforcement was sought.[3]

Stokes argues the time to enforce the lien has not expired because under *Byrne v. Ackerlund*, 108 Wn.2d 445, 739 P.2d 1138 (1987) her lien does not become subject to the limitation period until the sale of the property to the Rectors which was made less than 10 years ago. However *Byrne* rests on distinguishable facts. There the later property sale was a condition precedent to the ability to enforce the lien. *Byrne*, 108 Wn.2d at 456. Nothing in the record here suggests any obstruction prevented Stokes from enforcing her award within the statutory deadline. Stokes' reliance on *Byrne* is misplaced.

Stokes therefore is barred from enforcing her monetary award.

## *Conclusion*

We affirm the Court of Appeals when it concluded Stokes was barred by the statute of limitations from enforcing a

---

[3] The limitation period also ran out approximately four years before the extension statute was enacted. *See* LAWS OF 1994, ch. 189, § 1 (permitting 10-year extension if application filed within 90 days before original 10-year period expires) (codified at RCW 6.17.020(3)).

monetary award 19 years after the dissolution decree was entered. Polley shall recover his statutory costs on appeal.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, BRIDGE, and OWENS, JJ., concur.

CHAMBERS, J. (concurring) — I concur with the result and the opinion of the majority, except for its conclusion that "[t]he record on its face demonstrates the real property at issue was in fact Polley's separate property." Majority at 348. Whether or not the property in question was Polley's separate property is immaterial to both the analysis and result reached by the majority. Further, the trial court impliedly found the property in question to be community property in its findings of fact and conclusions of law. Clerk's Papers 100-01. I concur with the balance of the majority's opinion.

IRELAND, J., concurs with CHAMBERS, J.